No. 63,105

THE CITY OF WICHITA, KANSAS, *Appellant*, v. BOBBIE L. WALLACE, *Appellee*.

(788 P.2d 270)

Opinion filed March 2, 1990.

*Ed L. Randels*, assistant city attorney, argued the cause, and *Thomas R. Powell*, city attorney, was with him on the brief for appellant.

There was no appearance by the appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an appeal by the City of Wichita (City) from the district court's holding that an ordinance enacted by the City to regulate erotic dance studios was void because it was unconstitutionally vague.

The defendant, Bobbie L. Wallace, was found guilty in Wichita Municipal Court of operating an exotic dance studio between midnight and 6:00 a.m., in violation of Wichita, Kan., Code § 3.06.140 (1987). Defendant filed a timely notice of appeal to

Sedgwick County District Court. The parties stipulated to the following facts, which were the basis for the district court's decision:

"1. Bobbie L. Wallace, the Defendant, operates a business within the corporate limits of the City of Wichita, specifically located at 1021 Maple, Wichita, Sedgwick County, Kansas.

"2. A portion of the building described in No. 1 above is licensed by the Defendant as a 'drinking establishment' pursuant to the laws of the State of Kansas and Title 4 of the Code of the City of Wichita, Kansas.

"3. Another portion of the building described in No. 1 above occupies a 'private club,' or 'pop shop,' where live nude and/or topless dancing is offered for amusement.

"4. Membership in the 'private club' is open to any person or persons 21 years of age or older who do not identify themselves as a police officer and who pay a $1.00 lifetime membership fee.

"5. Customers of the drinking establishment are solicited to become members of the 'private club' by the Defendant and persons employed by the Defendant.

"6. The Defendant obtained a license from the City to operate an 'erotic dance studio,' pursuant to Chapter 3.06 of the Code of the City of Wichita, Kansas, at the location identified in No. 1 above, on or about December 31, 1987.

"7. The Defendant employs the individual entertainers in her drinking establishment as dancers in the 'pop shop.'

"8. There is no limit to the number of members who can join the 'private club.'

"9. During the solicitation for membership, customers are told that the 'pop shop' is a 'part of the business.'

"10. Membership rules, if any, are established by the Defendant, Bobbie L. Wallace.

"11. Membership is granted by the issuance of a paid receipt with the Defendant's name stamped on its face.

"12. Proof of age, the payment of the $1.00 fee, and a negative response to questions concerning whether the applicant is a police officer result in the immediate issuance of a membership receipt."

The district court found that defendant had standing and that the business was open to the public. In addition, the court found that the City had the authority to enact an ordinance for the purposes set out therein, to set forth procedures to obtain a license, and to regulate the times such establishments could be open, requirements concerning tips, and placement of a stage. The court, however, found the ordinance unconstitutionally void for vagueness, stating:

"5. On its face, the language referring to the City Council, 'if they approve the same, shall issue a license to the applicant' appears to give unrestricted discretion to the City Council as to which individual shall receive a license. If that construction is given this ordinance is void on its face because no such power could exist in the City Council. If the ordinance were not otherwise infirm, the Court having an obligation to construe legislation in a constitutional fashion, if possible, could construe this language to mean that any applicant who met the qualification would receive a license. A decision on that issue is not reached because the ordinance does not inform the person subject to its penalties what conduct will be penalized. When persons of common understanding must guess what . . . conduct is prohibited the enactment is void for vagueness. When one refers to the conduct which is being licensed that is where the infirmity appears."

The ordinance sought to regulate erotic dance studios by requiring such establishments to be licensed as follows:

"**License Required.** It is unlawful for any person, whether as principal, officer, agent, servant or employee:

"(a) To conduct business in or operate an erotic dance studio without having first obtained a license;

"(b) To fail to comply with all regulations provided in this chapter." Wichita, Kan., Code § 3.06.020.

The license is to be issued for a particular premises and is valid for a period of one year. Wichita, Kan., Code § 3.06.020. To obtain a license, a person must apply, providing name and residence, place of business, name of the owner of the premises, and names and addresses of all persons having a financial interest in the place. Wichita, Kan., Code § 3.06.040. The application must be accompanied by a license fee as required by § 3.06.030 of the Code. The chief of police is required to investigate the applicant. Wichita, Kan., Code § 3.06.040. A photograph of the applicant must accompany the application. Wichita, Kan., Code § 3.06.050. Employees of such establishments are also licensed and must provide similar information. Wichita, Kan., Code § 3.06.160.

The city council reviews the application and makes a decision about whether to issue or deny the license as follows:

"If the application for a license is in proper form and accompanied by the license fee as provided in Section 3.06.030, the City Council members shall examine the application and, after examination of the application, the City Council members, if they approve the same, shall issue a license to the applicant . . . ." Wichita, Kan., Code § 3.06.060.

The ordinance then contains four limitations on the issuance of a license, which include provisions concerning prior convictions involving moral turpitude, and the requirements of copartnership, a corporation, or a manager/agent. Wichita, Kan., Code § 3.06.060(a) through (d). None of these four exceptions is discussed in the record and therefore do not appear to be applicable to the case at hand.

The first section of the ordinance defines words or terms used therein. Three of the four set out in the ordinance are relevant to a decision of the issues raised in this appeal, and provided as follows:

" 'EROTIC DANCE STUDIO' means any place of business, or 'pop shop' open to the public, whether or not a cover charge is assessed, which emphasizes and presents live nude entertainment. Live entertainment includes but is not limited to, nude dancing and topless dancing.

" 'ENTERTAINMENT' means any live exhibition, performance, display or dance of any type, removal of articles of clothing or appearing unclothed, pantomime, modeling or other personal service offered for amusement.

" 'NUDE' means any state of undress in which the human genitals, pubic region, buttock or female breast at a point below the top of the areola, is less than completely and opaquely covered."

There were three hearings conducted in this case. At the first hearing, the court noted that defendant had standing to object to the enforcement of the ordinance against her. The court also noted that the ordinance appears to give the City unrestricted discretion as to whether to grant the license, which would make the ordinance invalid. Recognizing the requirement to construe the ordinance constitutionally, if possible, the court construed the ordinance to require the City to issue a license to anyone who qualifies under the licensing provisions.

The court noted that the City has a right to zone and determine where businesses will be conducted, the authority to regulate hours of closing in certain businesses for the good of the peace and quiet of the neighborhood, and the authority to regulate the sale and consumption of alcoholic liquor. The court noted, however, that the regulation of entertainment conflicts with First Amendment rights of freedom of expression, which have been held to include nudity. The court then asked the attorneys to brief the question of whether the ordinance was void for vague-

ness because of the possibility that people would have to guess about whether their conduct would come under the provisions of the ordinance.

At the second hearing, the court noted that the failure of the ordinance to require the element of scienter contributed to the court's concern that the ordinance was void for vagueness.

At the third and final hearing, the court expressed its concern that the definitions contained in the ordinance would apply to classical plays as well as performers in a musical play such as "Hair." When the city attorney responded that if "Hair" was to be performed, the issue would be whether the theatrical presentation emphasized and presented live nude entertainment. The court responded that this play surely did involve nudity: "The whole cast is completely nude." The court concluded that the ordinance did not contain language that informed licensed operators and licensed entertainers about what conduct they might or might not do, and found the ordinance void because it lacked a standard enabling the licensees to know whether their conduct was covered. The court dismissed the charges against defendant and the City appealed.

The issue on appeal is whether the ordinance enacted by the City of Wichita to regulate erotic dance studios is void because it is unconstitutionally vague. The City first argues that the trial court did not apply the appropriate standard in reviewing the constitutionality of this ordinance and directs this court's attention to *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 697 P.2d 1310 (1985). That case involved a declaratory judgment action to challenge the constitutionality of a Shawnee County resolution regulating "adult entertainment studios." This court stated the principles and guidelines involved in determining the constitutionality of enactments, whether by statute, city ordinance, or county resolution, as follows:

"The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond substantial doubt. The propriety, wisdom, necessity and expediency of legislation are

exclusively matters for legislative determination. Courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute to be in the public interest; what the views of the members of the court may be upon the subject [are] wholly immaterial. It is not the province nor the right of courts to determine the wisdom of legislation touching the public interest, as that is a legislative function with which courts cannot interfere. See *State v. Rose*, 234 Kan. 1044, 1045, 677 P.2d 1011 (1984); *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983); and *City of Baxter Springs v. Bryant*, 226 Kan. 383, 385-86, 598 P.2d 1051 (1979)." 237 Kan. at 74-75.

The trial court here appreciated the need to construe the ordinance as constitutionally valid, if possible. After voicing its concern that the ordinance appeared to give the City unlimited discretion to grant or deny a license, which would violate due process, the court decided that the ordinance could be construed to require the City to issue a license to anyone who qualified under the ordinance. The court repeatedly recognized the legitimate purposes the City sought to achieve in enacting the ordinance, but concluded that the language used to specify the proscribed activities was not adequate to provide notice of the conduct being prohibited. The City has made no showing that the trial court ignored the principles and guidelines set out in *Moody* or applied an inappropriate standard.

The City next contends that the court erred in finding that the ordinance failed to adequately define the proscribed conduct. The trial court found that the City of Wichita ordinance enacted to regulate erotic dance studios was void for vagueness because it did not adequately inform persons subject to its penalties of the conduct that would be penalized. The void-for-vagueness analysis is based upon a due process requirement that a criminal statute is unconstitutionally vague and indefinite unless its language conveys a sufficiently definite warning of the conduct proscribed when measured by common understanding and practice. *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983). The United States Supreme Court in *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972), stated:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person

of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to' "steer far wider of the unlawful zone" . . . than if the boundaries of the forbidden areas were clearly marked.' "

This court has also discussed the rules regarding vagueness, stating:

"The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. At its heart the test for vagueness is a commonsense determination of fundamental fairness." *State v. Kirby*, 222 Kan. 1, 4, 563 P.2d 408 (1977).

This court has recognized that the standards of certainty in a statute punishing criminal offenses are higher than those depending primarily upon civil sanction for enforcement. *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 533, 646 P.2d 1091 (1982). Furthermore, when First Amendment freedoms are at stake, the United States Supreme Court has "repeatedly emphasized that precision of drafting and clarity of purpose are essential." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 217-18, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975). Finally, this court has recognized that, in determining whether an ordinance is void for vagueness, the following two inquiries are appropriate: "(1) whether the ordinance gives fair warning to those persons potentially subject to it, and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement." *Dunn*, 233 Kan. at 418 (citing *Cardarella v. City of Overland Park*, 228 Kan. 698, 702, 620 P.2d 1122 [1980]).

The trial court found the definition of "erotic dance studio" contained within the ordinance vague because the language was not specific enough to enable an individual of ordinary intelligence to determine if conduct was prohibited. The City argues that the United States Supreme Court has held language similar to that used by the City of Wichita ordinance to define erotic dance studios was proper, citing *Young v. American Mini Theatres*, 427 U.S. 50, 49 L. Ed. 2d 310, 96 S. Ct. 2440, *reh. denied* 429 U.S. 873 (1976). We fail to see the similarity. The Detroit ordinance in *Young* regulated "adult motion picture theaters" that presented material "characterized by an emphasis on matter depicting, describing or relating to 'Specified Sexual Activities' or 'Specified Anatomical Areas.' " These quoted phrases were defined elsewhere in the regulation as follows:

" 'For the purpose of this Section, "Specified Sexual Activities" is defined as:

" '1. Human Genitals in a state of sexual stimulation or arousal;

" '2. Acts of human masturbation, sexual intercourse or sodomy;

" '3. Fondling or other erotic touching of human genitals, pubic region, buttock or female breast.

" 'And "Specified Anatomical Areas" is defined as:

" '1. Less than completely and opaquely covered: (a) human genitals, pubic region, (b) buttock, and (c) female breast below a point immediately above the top of the areola; and

" '2. Human male genitals in a discernibly turgid state, even if completely and opaquely covered.' " 427 U.S. at 53 n.4.

We find no such definitions in the Wichita ordinance. Here, the City argues that the similarities between the phrase "which emphasizes and presents live nude entertainment" used in the Wichita ordinance and the language "distinguished or characterized by an emphasis on matter depicting, describing or relating to 'Specified Sexual Activities' or 'Specified Anatomical Areas' " used in the Detroit ordinance show that the ordinance was not vague in defining erotic dance studios. We do not agree. First, these terms are specifically defined in the Detroit ordinance. Second, a basic difference arises between the adult movie theaters regulated in *Young* and the erotic dancing regulated by the Wichita ordinance. With adult movie theaters, the exhibitor can view the film prior to showing it in theaters to provide an opportunity to determine whether a film is borderline. 427 U.S. at 61. When

dance is involved, the exhibitor cannot view the performance ahead of time and be certain that the same behavior will occur later. The word "dance" has many definitions but, for purposes of this issue, is perhaps best defined as

"rhythmic movement having as its aim the creation of visual designs by a series of poses and tracing of patterns through space in the course of measured units of time, the two components, static and kinetic, receiving varying emphasis (as in ballet, natya, and modern dance) and being executed by different parts of the body in accordance with temperament, artistic precepts, and purpose . . . ." Webster's Third New International Dictionary 572 (1967).

Live entertainment, including nonobscene nude dancing, is recognized as a form of expression protected by the First and Fourteenth Amendments to the United States Constitution. *Schad v. Mount Ephraim,* 452 U.S. 61, 68 L. Ed. 2d 671, 101 S. Ct. 2176 (1981). Because of the nature of expression sought to be controlled and regulated by the City of Wichita, the ordinance must specify with detail the conduct that will be prohibited in light of the spontaneous nature of the behavior being addressed. The Wichita ordinance failed to do so.

As further support for its argument that the ordinance is not void for vagueness, the City directs this court's attention to two lower court decisions. In *Dumas v. City of Dallas,* 648 F. Supp. 1061 (N.D. Tex. 1986), the ordinance regulated several types of establishments, including arcades, bookstores, video stores, cabarets, motels, motion picture theaters, and adult theaters. 648 F. Supp. at 1078. The court rejected the challenge, in a declaratory judgment action, to various definitions and terms used in the ordinance, noting that all the terms were designed to give fair notice to persons of ordinary intelligence that contemplated conduct is forbidden. 648 F. Supp. at 1075 (quoting *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 31 L. Ed. 2d 110, 92 S. Ct. 839 [1972]). The court also noted that language for many of the provisions had been taken directly from ordinances that had been previously upheld by the United States Supreme Court as well as other courts. 648 F. Supp. at 1075.

The City also relies upon the holding in *Kev, Inc. v. Kitsap County,* 793 F.2d 1053 (9th Cir. 1986). In this action for injunctive and declaratory relief, an ordinance regulating erotic dance stu-

dios was found to be constitutional. The studio in question featured topless dancing and sold nonalcoholic beverages to adults for consumption on the premises. 793 F.2d at 1055. The court held that the section of the ordinance defining an erotic dance studio was not void for vagueness because it provided an adequate standard for enforcement and gave fair warning of the proscribed conduct to businesses it targeted. An erotic dance studio was defined as " 'a fixed place of business which emphasizes and seeks, through one or more dancers, to arouse or excite the patron's sexual desires.' " 793 F.2d at 1057. In reviewing this definition, the court noted that erotic dance studios were classified by the ordinance according to the manifest intent of the operator of the studio. The court reasoned that one who exhibited erotic dancing intending to arouse the sexual desires of patrons would know that such a business would fall within the purview of the ordinance because of the intent requirement contained within the definition of erotic dance studio. The court reasoned that this intent requirement provided the adequate standard for law enforcement to know what behavior was regulated and for business proprietors to receive fair warning of the conduct targeted. 793 F.2d at 1057. In reaching its decision, the court cites two other cases, both relevant for the issue considered in this case.

In *Boyce Motor Lines v. United States*, 342 U.S. 337, 342, 96 L. Ed. 367, 72 S. Ct. 329 (1952), a statute required drivers transporting explosives to avoid crowded thoroughfares "so far as practicable." The United States Supreme Court concluded that the statute, which was enacted following extensive participation by the trucking industry in a process of suggesting drafts of the legislation, was not void for vagueness because it required a knowing violation. Noting that the statute punished only those who knowingly violated its terms, the Court affirmed the conviction, reasoning as follows:

"This requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the Regulation would be so unfair that it must be held invalid. That is evident from a consideration of the effect of the requirement in this case. To sustain a conviction, the Government not only must prove that petitioner could have taken another route which was both commercially practicable and appreciably safer (in its avoidance of crowded thoroughfares, etc.) than the one it did follow. It must also be shown that petitioner knew

that there was such a practicable, safer route and yet deliberately took the more dangerous route through the tunnel, or that petitioner willfully neglected to exercise its duty under the Regulation to inquire into the availability of such an alternative route." 342 U.S. at 342.

Similarly, in *United States v. Doyle*, 786 F.2d 1440, 1443 (9th Cir. 1986), the United States Court of Appeals for the Ninth Circuit held that the presence of a scienter requirement in a statute prohibiting the sale, transportation, or receiving of wildlife without a permit issued by the state enabled the statute to withstand any challenge for vagueness. The court noted that, under Montana statutes, the illegal act must be committed knowingly to constitute a violation. Because substantial evidence indicated the defendant knew the falcons he obtained were wild and not bred and raised in captivity, the court concluded the scienter requirement was met and the vagueness challenge must fail.

Again we find no support for the City's position in these two cases. The Wichita ordinance contained no scienter requirement applicable either to the licensees or the employees. The trial court concluded that the definition of an "erotic dance studio," which applied to any place of business open to the public that emphasized and presented live nude entertainment, was void because the phrase "emphasizes and presents" was too unspecific to enable a licensee or employee to know whether conduct was covered by the statute. The trial court emphasized that nudity itself was a form of free expression that could not be precluded by the city regulation.

The trial court did not err in its decision that the use of the phrase "emphasizes and presents live nude entertainment" did not specifically describe the conduct that was to be regulated. The existence of a scienter requirement, such as the one in the Kitsap County ordinance, assists in specifying the regulated behavior. Since this case arose, the definition of "entertainment" in the Wichita ordinance has been amended to include a scienter element. It now regulates live performances "where one or more entertainers seek to arouse or excite the sexual desires of the entertainer, other entertainers or patrons." Wichita, Kan., Code § 3.06.10 (1988). Prosecution of this defendant, however, occurred under an ordinance that did not adequately inform de-

fendant of the conduct prohibited. The trial court was correct in finding that the ordinance was void for vagueness.

Finally, the City contends that, although the defendant had general standing to challenge the constitutionality of the ordinance, she "did not have standing to challenge the ordinance on the issue of vagueness."

We agree with the City that there is much confusion about "standing issues." Much of that confusion occurs because "vagueness" and "overbreadth" are sometimes used interchangeably or a clear distinction is not made between the two terms. However, these terms are not synonymous. A statute or ordinance can be clear and unambiguous but may nevertheless be overbroad if it prohibits constitutionally protected conduct. *Grayned v. City of Rockford*, 408 U.S. at 114. In *State ex rel. Murray v. Palmgren*, 231 Kan. at 533, we said: "While a vague statute leaves persons of common intelligence to guess at its meaning, an overbroad statute makes conduct punishable which under some circumstances is constitutionally protected." (Citing *State v. Huffman*, 228 Kan. 186, 189, 612 P.2d 630 [1980]; *State v. Stauffer Communications, Inc.*, 225 Kan. 540, 547, 592 P.2d 891 [1979])."

The difference between the two doctrines is discussed at 16A Am. Jur. 2d, Constitutional Law § 460, pp. 247-48:

"The distinction between the doctrines of overbreadth and vagueness is that the overbreadth doctrine is applicable primarily in the First Amendment area and may render void legislation which is lacking neither in clarity nor precision, whereas the vagueness doctrine is rested on the due process clauses of the Fifth and Fourteenth Amendments and is applicable solely to legislation which is lacking in clarity and precision. In some cases, legislation has been voided on the grounds of both overbreadth and vagueness. However, the Supreme Court has not always made a clear distinction between the doctrines of overbreadth and vagueness. Before the Supreme Court recognized the doctrine of overbreadth as a distinct doctrine, some legislation which the court might under its modern view vitiate on that ground was held invalid on the ground of vagueness."

The City argues that, under the analyses in *Young v. American Mini Theatres*, 427 U.S. 50, and *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 697 P.2d 1310 (1985), defendant here has no standing to argue the constitutionality of the ordinance as it relates to third parties. The City's reliance on *Young*

is misplaced. *Young* was a declaratory judgment action in which respondents, who operated adult motion picture theaters, argued that the ordinances were void because one could not determine the amount of described activity permissible before the movie was "characterized by an emphasis" on the regulated conduct. The respondents did not take issue with the definitions of the activity to be regulated nor did they claim that their proposed activity was not included in the definitions. Respondents also argued the ordinances were vague in specifying adequate procedures to obtain waiver of the 1,000-foot restriction on location of the theaters. In rejecting these due process arguments the Court concluded that, because the ordinances clearly applied to their conduct, respondents could not object if some uncertainty existed about their application in other situations. The Court rejected respondents' attempt to present an overbreadth argument on behalf of third parties.

"[T]he only vagueness in the ordinances relates to the amount of sexually explicit activity that may be portrayed before the material can be said to be 'characterized by an emphasis' on such matter. For most films the question will be readily answerable; to the extent that an area of doubt exists, we see no reason why the ordinances are not 'readily subject to a narrowing construction by the state courts.' Since there is surely a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance, and since the limited amount of uncertainty in the ordinances is easily susceptible of a narrowing construction, we think this is an inappropriate case in which to adjudicate the hypothetical claims of persons not before the Court." *Young v. American Mini Theatres*, 427 U.S. at 61.

In *Moody*, this court rejected a facial challenge to the Shawnee County resolution on overbreadth grounds. The court noted that the facts in the petition and record did not disclose how the resolution would affect plaintiff's First Amendment rights and, therefore, a claim that the resolution would impinge upon these rights was without factual or legal support. Unlike the present case, the resolution in *Moody* was not aimed at nude dancing but, rather, sex for hire in adult entertainment studios. We said:

"Expression, either by words or by dancing, is not the target of this legislation. Plaintiff does not allege that he provides dancing, nude or otherwise, in his establishment. We agree with the district court that the Resolution

does not contain any significant restraint on the exercise of plaintiff's First Amendment rights.

. . . .

"The Resolution is not one of broad general application. It does not apply to places other than licensed adult entertainment studios. It does not restrict or apply to dance studios, music stores or studios, Kansas 'private clubs,' taverns where cereal malt beverages are sold, or restaurants. It affects only licensed adult entertainment studios, as defined in the Resolution. The only persons affected are those similarly situated to the plaintiff. This Resolution will not have any different impact on third parties' interests in First Amendment protected speech than it has on the interests of plaintiff. For this reason, we need not consider plaintiff's facial challenge of the Resolution on overbreadth grounds. See *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 80 L. Ed. 2d 772, 782, 783, 784, 104 S. Ct. 2118 (1984), and cases there cited." 237 Kan. at 75-76.

Drawing from the above language in *Moody*, the City argues that the Wichita ordinance is not of broad, general application and does not apply to places other than erotic dance studios. It "does not restrict or apply to dance studios, music stores or studios, Kansas 'private clubs,' taverns where cereal malt beverages are sold, or restaurants. . . . The only persons affected are those similarly situated to the [defendant]." 237 Kan. at 76. Since the defendant stipulated that she obtained a license pursuant to the ordinance, the City claims there is no question the ordinance applied to the defendant. Therefore, because defendant cannot show the ordinance will have a different impact on third-party protected speech than it has on defendant's own interests, the City reasons defendant has no standing to attack the ordinance on the issue of *vagueness*. We do not agree. In *Moody*, the appellants argued that the ordinance was designed to ban nude dancing and therefore had the effect of prohibiting or regulating First Amendment protected activity. As we previously noted, the court found the resolution was not directed at nude dancing, and neither appellants' nor third parties' First Amendment rights were impaired. Therefore, respondents did not have standing to challenge the resolution as being overbroad. In the present case, the district court found the ordinance was void for vagueness because it violated due process by not clearly defining its prohibitions to inform an individual of ordinary intelligence of the conduct prohibited and to prevent arbitrary and discriminatory enforcement. Although the district court recognized the impact of the ordinance

on activities protected under the First Amendment, its decision was not based upon the significant restraint to the defendant's or third parties' First Amendment rights.

The United States Supreme Court has recognized that, although an ordinance is not vague or overbroad as applied to a defendant, he or she may nevertheless be permitted to raise its vagueness or overbreadth as applied to the First Amendment protected rights of third parties. An exception to normal standing requirements is allowed because the mere existence of the statute could cause a person not before the Court to refrain from engaging in constitutionally protected speech or expression. *Young v. American Mini Theatres*, 427 U.S. 50, 60, 49 L. Ed. 2d 310, 96 S. Ct. 2440, *reh. denied* 429 U.S. 873 (1976) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 611-614, 37 L. Ed. 2d 830, 93 S. Ct. 2908 [1973]). This exception is justified by the importance of maintaining a free and open market for the exchange of ideas, but can be overridden if the deterrent effect on legitimate expression is not " 'both real and substantial,' " and if the statute is " 'readily subject to a narrowing construction by the state courts.' " *Young*, 427 U.S. at 60 (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 45 L. Ed. 2d 125, 95 S. Ct. 2268 [1975]).

This exception was discussed in *Schad v. Mount Ephraim*, 452 U.S. 61, 68 L. Ed. 2d 671, 101 S. Ct. 2176 (1981), where the appellants were convicted of violating a city zoning ordinance that prohibited live entertainment. The violation consisted of appellants' permitting customers to view live nude dancers through a glass panel. In reversing the convictions, Justice White, speaking for the majority, said:

"By excluding live entertainment throughout the Borough, the Mount Ephraim ordinance prohibits a wide range of expression that has long been held to be within the protections of the First and Fourteenth Amendments. Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee. *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952); *Schacht v. United States*, 398 U.S. 58 (1970); *Jenkins v. Georgia*, 418 U.S. 153 (1974); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975); *Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975); *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975). See also *California v. LaRue*, 409 U.S. 109, 118

(1972); *Young v. American Mini Theatres, Inc., supra*, at 61, 62. Nor may an entertainment program be prohibited solely because it displays the nude human figure. '[N]udity alone' does not place otherwise protected material outside the mantle of the First Amendment. *Jenkins v. Georgia, supra*, at 161; *Southeastern Promotions, Ltd. v. Conrad, supra; Erznoznik v. City of Jacksonville, supra*, at 211-212, 213. Furthermore, as the state courts in this case recognized, nude dancing is not without its First Amendment protections from official regulation. *Doran v. Salem Inn, Inc., supra; Southeastern Promotions, Ltd. v. Conrad, supra; California v. LaRue, supra*.

"Whatever First Amendment protection should be extended to nude dancing, live or on film, however, the Mount Ephraim ordinance prohibits all live entertainment in the Borough: no property in the Borough may be principally used for the commercial production of plays, concerts, musicals, dance, or any other form of live entertainment. Because appellants' claims are rooted in the First Amendment, they are entitled to rely on the impact of the ordinance on the expressive activities of others as well as their own. 'Because overbroad laws, like vague ones, deter privileged activit[ies], our cases firmly establish appellant's standing to raise an overbreadth challenge.' *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972)." 452 U.S. at 65-66.

Justice White pointed out that the Court's decision in *Young* was not controlling, stating:

"Here, the Borough totally excludes all live entertainment, including non-obscene nude dancing that is otherwise protected by the First Amendment. As we have observed, *Young v. American Mini Theatres, Inc., supra*, did not purport to approve the total exclusion from the city of theaters showing adult, but not obscene, materials. It was carefully noted in that case that the number of regulated establishments was not limited and that '[t]he situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech.' 247 U.S. at 71, n.35." 452 U.S. at 76.

In the present case, because of its vagueness the ordinance had the effect of precluding or severely restricting activities protected under the First Amendment. Clearly, both the defendant's and third parties' First Amendment rights are impacted by the ordinance, thus permitting the defendant to raise its unconstitutional overbreadth as applied to her as well as to others. Since the ordinance suffers from both vagueness and overbreadth as applied to the defendant, the district court correctly found that she had standing to challenge the constitutionality of the ordinance.

The judgment of the district court is affirmed.