No. 68,636

STATE OF KANSAS, *Appellant*, v. JOHN B. ADAMS, *Appellee*.

(866 P.2d 1017)

Opinion filed January 21, 1994.

*Ky Ann Buck*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with her on the brief for appellant.

*Michael S. Holland*, of Russell, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an appeal by the State, pursuant to K.S.A. 1992 Supp. 22-3601(b)(2) and K.S.A. 22-3602(b)(1), from an order of the district court dismissing two counts of official misconduct, K.S.A. 21-3902, against John B. Adams, the Chief of Police of St. John, Kansas. The complaint was dismissed on the ground that the statute is unconstitutionally vague and indefinite.

The charges arose out of two separate incidents. In Count I of the complaint, Adams was charged with advising potential witnesses. While sitting in a marked patrol car, Adams allegedly had a conversation with Kristin Rodarmel and Nickie Willinger about three incidents which allegedly occurred at the residence of John Court Adams, Adams' son, at his 20th birthday party on November 30, 1991. The incidents were subjects of criminal in-

vestigation at the time Adams had the conversation with Rodarmel and Willinger. The incidents were serving cereal malt beverage to underaged persons, battering of John Long by John Court Adams, and criminal trespass by John Long.

Adams went to his son's residence during the party. Beer cans and liquor bottles were readily visible on the kitchen counter while he was there. Approximately 15 persons attended the party, and only 3 were over the age of 21. There was a fight at the party between John Court Adams and John Long. As a result, John Long was treated at the hospital for a cracked cheekbone and a facial laceration.

In the afternoon of December 1, 1991, at a convenience store in St. John, Adams is alleged to have said to Rodarmel and Willinger that the Kansas Bureau of Investigation would be interviewing witnesses and that "[i]f I were the minors at the party, I would say I did not drink and I did not know where the beer came from." Rodarmel was 16 and Willinger was 17 at the time.

In Count II of the complaint, Adams was charged with searching a motor vehicle without the legal authority to do so. Adams allegedly searched a 1988 Oldsmobile without the consent of the owner, Frank Trevino, and without a search warrant. The search took place at the Cherrylane Apartments in St. John at approximately 9:30 p.m. on September 11, 1991. Trevino is a resident of Great Bend.

At approximately 8:54 p.m., the dispatcher received a report of suspicious activity at the Cherrylane Apartments. Officers who went to the apartment complex observed no suspicious activity. At approximately 9:29 p.m., the same person who had contacted the dispatcher earlier reported to the Stafford County Sheriff's Office that there was suspicious activity at the Cherrylane Apartments. Four officers, including Adams, went to the apartment complex. Adams directed the other officers to watch for persons arriving at or leaving the apartment complex. Without attempting to obtain consent or a warrant, Adams searched Trevino's car. Adams removed a container from the car, determined that it contained sugar, and replaced it in the car.

Adams was charged under K.S.A. 21-3902. However, the district court found that "the statute is vague and it is indefinite as to what conduct is proscribed" and that it cannot "serve as a

definite warning to the person allegedly committing official misconduct." The district court therefore concluded that the statute was unconstitutional and granted the defendant's motion to dismiss.

The sole issue on appeal is whether K.S.A. 21-3902, on its face, is unconstitutionally vague and indefinite. K.S.A. 21-3902 provides in pertinent part as follows:

"Official misconduct is any of the following acts committed by a public officer or employee in his public capacity or under color of his office or employment:

"(a) Willfully and maliciously committing an act of oppression, partiality, misconduct or abuse of authority . . . .

. . . .

"Official misconduct is a class A misdemeanor. Upon conviction of official misconduct a public officer or employee shall forfeit his office or employment."

The State urges this court, at the outset, to appreciate the need to construe a statute as constitutionally firm whenever possible. The State directs the court's attention to the following principles quoted in *City of Wichita v. Wallace*, 246 Kan. 253, 257, 788 P.2d 270 (1990):

" 'The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond substantial doubt.' " (Quoting *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 74, 697 P.2d 1310 [1985].)

In relation to the specific complaint of vagueness, this court stated:

"[T]he void-for-vagueness analysis is based upon a due process requirement that a criminal statute is unconstitutionally vague and indefinite unless its language conveys a sufficiently definite warning of the conduct proscribed when measured by common understanding and practice. *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983)." *City of Wichita*, 246 Kan. at 258.

In *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983), the test was stated as

"whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process."

In *City of Wichita*, 246 Kan. at 259, the court quoted *State v. Kirby*, 222 Kan. 1, 4, 563 P.2d 408 (1977), for this trenchant comment: " 'At its heart the test for vagueness is a commonsense determination of fundamental fairness.' "

In addition to the inquiry whether the proscribed conduct is adequately defined, the court recognizes that a second inquiry is appropriate. That inquiry is " 'whether the ordinance adequately guards against arbitrary and discriminatory enforcement.' *Dunn*, 233 Kan. at 418 (citing *Cardarella v. City of Overland Park*, 228 Kan. 698, 702, 620 P.2d 1122 [1980])." *City of Wichita*, 246 Kan. at 259. When making either inquiry, the court should bear in mind that "[t]he standards of certainty in a statute punishing criminal offenses are higher than in those depending primarily upon civil sanctions for enforcement." 246 Kan. 253, Syl. ¶ 3.

In *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972), the United States Supreme Court discussed the reasons why

"[v]ague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

Here, the district court's conclusion that K.S.A. 21-3902 is void for vagueness was based on its finding that the proscription was too indefinite to serve as a warning. The State contends that the district court erred in finding that the statute failed to adequately define the proscribed conduct.

Although "overbreadth" is not the basis for the district court's decision, it is argued by both parties in this appeal.

In *City of Wichita*, this court cautioned that confusion may occur when "vagueness" and "overbreadth" are used interchangeably. There, it was stated that a statute "can be clear and unambiguous but may nevertheless be overbroad if it prohibits constitutionally protected conduct." 246 Kan. at 264. Hence, even if the precision of the drafting of K.S.A. 21-3902(a) and the clarity of its purpose were above reproach, if it prohibited constitutionally protected speech, it would be impermissibly overbroad.

The following discussion of the difference between "vagueness" and "overbreadth" from 16A Am. Jur. 2d, Constitutional Law § 460, pp. 247-48, is quoted in *City of Wichita*, 246 Kan. at 264:

" 'The distinction between the doctrines of overbreadth and vagueness is that the overbreadth doctrine is applicable primarily in the First Amendment area and may render void legislation which is lacking neither in clarity nor precision, whereas the vagueness doctrine is rested on the due process clauses of the Fifth and Fourteenth Amendments and is applicable solely to legislation which is lacking in clarity and precision. In some cases, legislation has been voided on the grounds of both overbreadth and vagueness. However, the Supreme Court has not always made a clear distinction between the doctrines of overbreadth and vagueness. Before the Supreme Court recognized the doctrine of overbreadth as a distinct doctrine, some legislation which the court might under its modern view vitiate on that ground was held invalid on the ground of vagueness.' "

Adams cites *Houston v. Hill*, 482 U.S. 451, 462, 96 L. Ed. 2d 398, 107 S. Ct. 2502 (1987), and quotes from *N.A.A.C.P. v. Button*, 371 U.S. 415, 432, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963). The passage he quotes is:

"Furthermore, the instant decree may be invalid if it prohibits privileged exercises of First Amendment rights whether or not the record discloses that the petitioner has engaged in privileged conduct. For in appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar."

It continues:

"The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application. [Citation omitted.] These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently

as the actual application of sanctions. [Citation omitted.] Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity. [Citation omitted.]" 371 U.S. at 432-33.

In *State v. Huffman*, 228 Kan. 186, 612 P.2d 630 (1980), the defendant challenged K.S.A. 21-4101 (disorderly conduct) on the basis of "overbreadth." This court upheld the statute by narrowly construing the statute to prohibit speech limited to the category of fighting words. In so doing, we said:

"Certain fundamental principles chart the permissible course for government regulation of speech. The First Amendment guarantee of freedom of speech forbids the States to punish use of language and words except in certain 'narrowly limited classes of speech.' *Chaplinsky v. New Hampshire*, 315 U.S. at 571. 'Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.' *N.A.A.C.P. v. Button*, 371 U.S. 415, 433, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963). Limited categories of speech which are not protected by the First Amendment include: Fighting words—*Chaplinsky v. New Hampshire*, 315 U.S. 568; obscenity—*Miller v. California*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973), and *Roth v. United States*, 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957); libel—*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974), and *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964); and incitement—*Brandenburg v. Ohio*, 395 U.S. 444, 23 L. Ed. 2d 430, 89 S. Ct. 1827 (1969), and *Feiner v. New York*, 340 U.S. 315, 95 L. Ed. 295, 71 S. Ct. 303 (1951)." 228 Kan. at 190.

Adams argues that Count I involves First Amendment rights. We agree. In addition, it is not difficult to hypothesize other factual instances which under the statute would affect First Amendment freedoms. If such conduct is not within the "narrowly limited classes of speech," the State cannot prohibit or punish it.

Under K.S.A. 21-3902, it is a crime for a public official to willfully and maliciously commit an act of misconduct. The statute does not specifically enumerate the types of misconduct prohibited. Misconduct is a general term and, as such, it has been struck down as unconstitutionally vague.

In *Giaccio v. Pennsylvania*, 382 U.S. 399, 15 L. Ed. 2d 447, 86 S. Ct. 518 (1966), the Supreme Court found a Pennsylvania statute allowing the jury to assess court costs against an acquitted

defendant to be unconstitutionally vague. The judge instructed the jury, in part, that

"though found not guilty of the crime charged, if the jury found that 'he has been guilty of some misconduct less than the offense which is charged but nevertheless misconduct of some kind as a result of which he should be required to pay some penalty short of conviction [and] . . . his misconduct has given rise to the prosecution.' " 382 U.S. at 404.

In finding the statute impermissibly vague, the Supreme Court said:

"It may possibly be that the trial court's charge comes nearer to giving a guide to the jury than those that preceded it, but it still falls short of the kind of legal standard due process requires. At best it only told the jury that if it found appellant guilty of 'some misconduct' less than that charged against him, it was authorized by law to saddle him with the State's costs in its unsuccessful prosecution. It would be difficult if not impossible for a person to prepare a defense against such general abstract charges as 'misconduct,' or 'reprehensible conduct.' *If used in a statute which imposed forfeitures, punishments or judgments for costs, such loose and unlimiting terms would certainly cause the statute to fail to measure up to the requirements of the Due Process Clause.* And these terms are no more effective to make a statute valid which standing alone is void for vagueness." (Emphasis added.) 382 U.S. at 404.

In *Soglin v. Kauffman*, 418 F.2d 163 (7th Cir. 1969), the court found unconstitutional a university disciplinary proceeding suspending a student for "misconduct." The *Soglin* court found the term "misconduct" to be unconstitutionally vague, stating:

"The use of 'misconduct' as a standard in imposing the penalties threatened here must therefore fall for vagueness. The inadequacy of the rule is apparent on its face. It contains no clues which could assist a student, an administrator or a reviewing judge in determining whether conduct not transgressing statutes is susceptible to punishment by the University as 'misconduct.' Since the misconduct standard is invalid on its face, it was unnecessary for the district court to make any findings with respect to plaintiffs' activities on October 18, 1967.

. . .

". . . The ability to punish 'misconduct' *per se* affords no safeguard against the imposition of disciplinary proceedings overreaching permissible limits and penalizing activities which are free from any taint of impropriety." 418 F.2d at 168.

Adams relies heavily on *State v. DeLeo*, 356 So. 2d 306 (Fla. 1978). In that case, appeals from two prosecutions under Fla. Stat. § 839.25(1)(c) (1977) were consolidated and placed before

the Florida Supreme Court the question of the statute's consti-
tutional validity. The court invalidated the statute "because it is
susceptible to arbitrary application." 356 So. 2d at 307. The stat-
ute stated in pertinent part as follows:

" 'Official Misconduct' means the commission of one of the following acts
by a public servant, with corrupt intent to obtain a benefit for himself or
another or to cause unlawful harm to another:

. . . .

"(c) Knowingly violating, or causing another to violate, any statute or
lawfully adopted regulation or.. rule relating to his office."

*DeLeo* is the only case cited by the parties which is directly
analogous to the present case. The Florida Supreme Court rea-
soned:

" 'Official Misconduct' under subsection (c) is keyed into the violation of
any statute, rule or regulation, pertaining to the office of the accused,
whether they contain criminal penalties themselves or not, and no matter
how minor or trivial. Any public servant may commit such misconduct.
Public servant is not defined in Chapter 839, but in Chapter 838, a related
Chapter, it is defined for purposes of that Chapter as any public officer,
agent or governmental employee, whether elected or appointed. Theoret-
ically, then, using this definition an appointed employee could be charged
with official misconduct, a felony in the third degree and punishable by up
to five years in prison or a fine up to $5,000, for violating a minor agency
rule applicable to him, which might carry no penalty of its own.

"Of course, the violation must be proven to have been committed with
corrupt intent. This element of the offense might prevent its arbitrary ap-
plication, but it does not. All that [is] necessary for intent to be corrupt is
that it be 'done with knowledge that the act is wrongful and with improper
motive.' This standard is too vague to give men of common intelligence
sufficient warning of what is corrupt and outlawed, therefore, by the statute.
The 'corruption' element, as defined, does nothing to cure the statute's
susceptibility to arbitrary application.

"While some discretion is inherent in prosecutorial decision-making, it
cannot be without bounds. The crime defined by the statute, knowing
violations of any statute, rule or regulation for an improper motive, is simply
too open-ended to limit prosecutorial discretion in any reasonable way. The
statute could be used, at best, to prosecute, as a crime, the most insignificant
of transgressions or, at worst, to misuse the judicial process for political
purposes. We find it susceptible to arbitrary application because of its 'catch-
all' nature." 356 So. 2d at 308.

The Florida Supreme Court also was concerned that § 839.25
carried a felony designation and a possible penalty of up to five
years' imprisonment or a $5,000 fine. Official misconduct under

the Kansas statute is a class A misdemeanor. It should also be noted that forfeiture of office is mandatory upon conviction of K.S.A. 21-3902.

A problem, as far as the Florida court was concerned, with that state's official misconduct criminal statute was the way it was "keyed into" the violation of not only criminal statutes, but also non-penal statutes, rules, and regulations pertaining to the office of the accused. The Florida court was concerned that the statute would support prosecution for "a minor agency rule." K.S.A. 21-3902 does not contain a similar "keying-in" provision. Thus, it does not expressly sanction prosecuting violations of trivial rules. On the other hand, it does not restrict prosecutions to significant transgressions. In fact, there is a complete absence of any link with recognized behavioral standards. For this reason, K.S.A. 21-3902 on its face is susceptible to arbitrary and discriminating interpretation and application by those charged with the responsibility of enforcing it. As noted by the Florida Supreme Court, the requirement that the act be done willfully and maliciously does not prevent the statute's arbitrary and discriminatory application. An act which is vague does not become certain because it is done willfully and maliciously.

Due to the great divergence of opinion held in our society as to what is acceptable or proper behavior, misconduct is in the eye of the beholder. For that reason, "misconduct" as a standard of conduct is "so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983). Nor are we persuaded by the State's argument that the words "oppression," "partiality," "misconduct," or "abuse of authority" are commonly understood and therefore not vague, citing *State v. Rose*, 234 Kan. 1044, 1046, 677 P.2d 1011 (1984); *In re Brooks*, 228 Kan. 541, 544, 618 P.2d 814 (1980); and *Kansas City Millwright Co., Inc. v. Kalb*, 221 Kan. 658, 663, 562 P.2d 65 (1977). Those cases are distinguishable from the present case. In *Rose*, the term challenged as vague was the word "substantially" in K.S.A. 8-1749a(a) (Ensley), which proscribed the use of windshields and side windows in motor vehicles that "prohibit[ed] or substantially impair[ed] the ability to see into such motor vehicle from the outside." Our decision, to a great extent, was based on

the fact that the terms "substantial" and "material" are synonymous and their meaning had been construed in numerous Kansas appellate cases. We concluded:

"The gravamen of the offense is clearly the impairment of visibility into the motor vehicle from the outside. Operators and owners of vehicles are clearly and sufficiently warned they cannot install one-way glass or apply other substances to the windshield and side windows of a car or other vehicle which prevents or impairs the ability to view the inside of the vehicle from the outside." 234 Kan. at 1049-50.

In *Brooks*, the term "unfit," as used in K.S.A. 1978 Supp. 38-824, was challenged as vague. We concluded that the term had been previously construed and defined in this court and in the Court of Appeals and therefore was not vague. 228 Kan. at 546-47.

Nor does it follow that these terms are "commonly understood" because they are defined in any standard dictionary. Many words are defined in a standard dictionary which are not "commonly understood." The question is whether a person of ordinary intelligence understands what conduct is prohibited by the use of these terms. The terms are not adjectives which modify, limit, or qualify the act or conduct prohibited. Instead, each of these terms constitutes conduct which is prohibited. Nor are they terms which have been considered and defined by numerous appellate court decisions. We find such unlimiting terms necessarily require persons of ordinary intelligence to guess at what acts constitute "official misconduct" and differ as to their application.

Reading K.S.A. 21-3902 in light of the previously stated standard, we conclude that the statute is impermissibly vague and violates due process of law.

The judgment of the district court dismissing the two counts of official misconduct is affirmed.