THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KIRSTEN J. WILLNER, Defendant-Appellant.

Fourth District   No. 4—07—0926

Opinion filed June 26, 2009.

Gary R. Peterson and Susan M. Wilham, both of State Appellate Defender's Office, of Springfield, for appellant.

Jonathan H. Barnard, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Kirsten J. Willner, was charged with unlawful possession of pseudoephedrine because she knowingly purchased, within a 30-day period, products containing more than 7,500 milligrams of pseudoephedrine in violation of section 20(b) of Methamphetamine Precursor Control Act (Act) (720 ILCS 648/20(b) (West 2006)). Defendant unsuccessfully challenged the constitutionality of the statute under which she was charged. Defendant stipulated the State's evidence was sufficient to convict under the statute. The trial court sentenced her to 12 months' probation. Defendant appeals, arguing section 20(b) of the Act is unconstitutional because it is overbroad and criminalizes innocent conduct. We affirm.

## I. BACKGROUND

On June 18, 2007, defendant was charged with violating section 20(b) of the Act after she purchased products containing more than 7,500 milligrams of pseudoephedrine within a 30-day period. In October 2007, defendant filed a motion with the trial court requesting it adopt prior motions, evidence, and transcripts from People v. Willner, Adams County case No. 06—CM—513. That case involved the same charge and contained a motion to declare section 20(b) of the Act (720 ILCS 648/20(b) (West 2006)) unconstitutional. At a November 1, 2007, bench trial, defendant stipulated the State would present evidence showing she purchased the requisite amounts of products containing pseudoephedrine within the time period prescribed by sec-

tion 20(b) to prove a violation of section 20(b). Based upon the stipulation, the court found defendant guilty of a Class B misdemeanor and sentenced her as stated.

On November 6, 2007, the trial court entered a written order allowing the adoption in this case of the motion to declare section 20(b) of the Act (720 ILCS 648/20(b) (West 2006)) unconstitutional, which defendant had filed in People v. Willner, Adams County case No. 06—CM—513. The court denied the motion and reentered its opinion and order in People v. Willner, Adams County case No. 06—CM—513, in this case.

This appeal followed.

## II. ANALYSIS

Defendant contends section 20(b) of the Act violates the due-process guarantee of the Illinois Constitution (Ill. Const. 1970, art. I, §2) because it is overbroad and criminalizes innocent conduct. The State responds defendant failed to meet her burden of clearly establishing section 20(b) of the Act violates substantive due process. The issue on review is whether a reasonable relationship lies between the criminalization of the purchase of more than 7,500 milligrams of products containing a methamphetamine precursor, ephedrine or pseudoephedrine, and the legislature's goal of combating methamphetamine manufacturing and distribution.

### A. Standard of Review

The constitutionality of a statute is reviewed de novo. People v. Jones, 223 Ill. 2d 569, 596, 861 N.E.2d 967, 983 (2006). Statutes are presumed to be constitutional. Jones, 223 Ill. 2d at 595, 861 N.E.2d at 983. A party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity. Jones, 223 Ill. 2d at 596, 861 N.E.2d at 983. The legislature has broad discretion in determining what the public interest and welfare require and to determine the measures needed to secure such interest. Chicago National League Ball Club, Inc. v. Thompson, 108 Ill. 2d 357, 364, 483 N.E.2d 1245, 1248 (1985). The legislature has broad discretion in determining penalties for criminal offenses but is limited by the constitutional guarantee a person may not be deprived of liberty without due process of law. People v. Wright, 194 Ill. 2d 1, 24, 740 N.E.2d 755, 766-67 (2000).

The Illinois Constitution states:

"No person shall be deprived of life, liberty[,] or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, art. I, §2.

When legislation does not affect a fundamental constitutional right, the court applies the rational-basis test to determine the

legislation's constitutionality. *Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 767. A statute attacked on due-process grounds will be upheld so long as it (1) bears a reasonable relationship to the public interest sought to be protected and (2) the means employed are a reasonable method of achieving the desired objective. *People v. Carpenter*, 228 Ill. 2d 250, 267-68, 888 N.E.2d 105, 116 (2008). When applying the rational-basis test, the court is highly deferential to the findings of the legislature. *People v. Johnson*, 225 Ill. 2d 573, 585, 870 N.E.2d 415, 422 (2007). "[I]f any state of facts can reasonably be conceived to justify the enactment, it must be upheld." *People v. Shephard*, 152 Ill. 2d 489, 502, 605 N.E.2d 518, 525 (1992).

Defendant has not argued that the statute's method of enforcement is unreasonable.

### B. The Reasonable-Relationship Test

#### 1. *The Statute's Purpose*

The language of the statute is the best indication of the legislature's intent. *Carpenter*, 228 Ill. 2d at 268, 888 N.E.2d at 116.

"The purpose of this Act is to reduce the harm that methamphetamine manufacturing and manufacturers are inflicting on individuals, families, communities, first responders, the economy, and the environment in Illinois, by making it more difficult for persons engaged in the unlawful manufacture of methamphetamine and related activities to obtain methamphetamine's essential ingredient, ephedrine or pseudoephedrine." 720 ILCS 648/5 (West 2006).

The Act's language shows the legislature intended to safeguard the public welfare from the harm caused by the manufacturing and distribution of methamphetamine by limiting the amount of methamphetamine precursor available to methamphetamine manufacturers.

#### 2. *The Statute's Relationship to the State's Goal*

Defendant maintains section 20(b) violates due process because it makes an innocent act, the knowing purchase of products containing methamphetamine precursors, a criminal offense. This is apparently a case of first impression. Section 20(b) provides as follows:

"Except as provided in subsection (e) of this Section, no person shall knowingly purchase, receive, or otherwise acquire, within any 30-day period products containing more than a total of 7,500 milligrams of ephedrine or pseudoephedrine, their salts or optical isomers, or salts of optical isomers." 720 ILCS 648/20(b) (West 2006).

The exceptions found in subsection (e), referred to in subsection (b) above, apply to pharmacists, doctors, and others authorized to distribute these products. 720 ILCS 648/20(e) (West 2006).

In our view, section 20(b) bears a reasonable relationship to the State's interest in stopping the manufacture and distribution of methamphetamine. The legislature has found ephedrine or pseudoephedrine is the "essential ingredient" (720 ILCS 648/5 (West 2006)) in methamphetamine. While both ephedrine and pseudoephedrine have legitimate medical uses, methamphetamine manufacturers can extract the methamphetamine's precursors from over-the-counter cold medicines for use in methamphetamine production. The legislature could reasonably have determined a link exists between individuals making repeated purchases of small quantities of products containing methamphetamine precursors over short periods of time and the manufacture and distribution of methamphetamine. A review of the Act's legislative history suggests the legislature did find a connection between such purchasers and methamphetamine manufacturing and distribution. See 94th Ill. Gen. Assem., House Proceedings, October 26, 2005, at 21 (statements of Representative Bradley) (noting the Act is "absolutely necessary in order to rid our communities of methamphetamine abuse").

The legislature has the power to declare and define criminal conduct and to determine the type and extent of punishment for it. *People v. Hickman*, 163 Ill. 2d 250, 259, 644 N.E.2d 1147, 1151 (1994). Methamphetamine is frequently produced with legal products containing methamphetamine precursors, which have legitimate medical uses. However, the legislature could have determined ordinary consumers cannot be readily separated from illegitimate "pill shoppers" prior to each purchase. Section 20(b) provides a reasonable means of limiting the amount of methamphetamine precursor available for diversion to the manufacture of methamphetamine. This diversion affects the public welfare. As a result, the legislature had the ability to use its police power to place limits on the purchase of products containing methamphetamine precursors. The restrictions in section 20(b) represent a valid exercise of police power and do not violate the due-process clause of the Illinois Constitution.

Statutes previously criminalized possession of any methamphetamine-manufacturing chemical with intent to manufacture methamphetamine (720 ILCS 570/401(a)(6.6), (d—5) (West 2004)) and still provide felony penalties for procuring, possessing, or delivering any methamphetamine precursor with the intent it be used to manufacture methamphetamine (720 ILCS 646/20 (West 2006)). Methamphetamine manufacturers have evaded these laws by inducing individuals, who may not intend to manufacture methamphetamine themselves, to purchase the methamphetamine precursors needed. The legislature reasonably sought to regulate these purchases.

Defendant compares this case to *People v. Wick*, 107 Ill. 2d 62, 481 N.E.2d 676 (1985). In *Wick*, the supreme court held the aggravated-arson statute bore no reasonable relationship to the State's goal of protecting the public from dangerous fires because, unlike the arson statute, the aggravated-arson statute had no mental-state requirement. *Wick*, 107 Ill. 2d at 66, 481 N.E.2d at 678. Instead, the aggravated-arson statute criminalized the setting of any fire in which a fireman or peace officer was injured without regard to whether the fire was legally set. *Wick*, 107 Ill. 2d at 66, 481 N.E.2d at 678 (noting a farmer could legally burn a barn but be convicted of a Class X felony because a fireman was injured extinguishing the fire). The court found it completely irrational to impose a Class X felony where someone was injured but no penalty otherwise. *Wick*, 107 Ill. 2d at 67, 481 N.E.2d at 679.

We find *Wick* distinguishable from the case *sub judice*. The court in *Wick*, 107 Ill. 2d at 66, 481 Ill. 2d at 678, held the statute was irrational because it severely punished individuals who set legal fires that injured others when its clear purpose was to punish arsonists who injured others. Here, a purchase does not become illegal simply because the pills are later used to manufacture methamphetamine without regard to the purchaser's intent. Instead, purchasing, receiving, or otherwise acquiring more than 7,500 milligrams of a product containing methamphetamine precursors within a 30-day period is not permitted, regardless of the pills' intended use.

Defendant further argues section 20(b) does not reasonably relate to limiting methamphetamine manufacturing and distribution because it has the potential to punish people who reasonably believe they are engaging in lawful activity. Defendant presented the testimony of a witness who innocently purchased quantities of pseudoephedrine that met or exceeded 7,500 milligrams in a 30-day period. The witness testified she made the purchase because her whole family had allergy and sinus problems. The witness also testified she switched to a different product not containing pseudoephedrine, which did not function quite as well as products containing pseudoephedrine for her family's needs. The Act is designed to limit methamphetamine manufacturing and distribution. It does not become unreasonable merely because some purchasers without the intent to manufacture methamphetamine might violate its terms or suffer inconvenience.

## III. CONCLUSION

We affirm the judgment of the trial court. As part of our judg-

ment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

MYERSCOUGH and APPLETON, JJ., concur.