No. 3--08--1037

Filed October 27, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Hancock County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.  08--CF--28 |
| GERALD C. SCHMIDT, | ) ) | Honorable David F. Stoverink, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the opinion of the court:

The State charged defendant, Gerald Schmidt, with a plethora of crimes stemming from an incident that occurred on May 27, 2008.  A Hancock County jury found defendant guilty of unlawful use of property (720 ILCS 646/35(a) (West 2008)), unlawful possession of methamphetamine precursor (720 ILCS 646/20(b)(1) (West 2008)), unlawful possession of methamphetamine (720 ILCS 646/60(a) (West 2008)), obstructing justice (720 ILCS 5/31--4(a) (West 2008)), and aggravated fleeing or attempt to elude a peace officer (625 ILCS 5/11--204.1(a)(1) (West 2008)).  The circuit court sentenced defendant to the following terms of imprisonment:

unlawful use of property, 20 years; unlawful use of methamphetamine precursor, 20 years;  unlawful possession of methamphetamine, 4 years; obstructing justice, 2 years; and aggravated fleeing or attempt to elude a peace officer, 2 years.

In this direct appeal, defendant claims that his conviction for unlawful use of property cannot stand as section 35 of the Methamphetamine Control and Community Protection Act (the Act) (720 ILCS 646/35 (West 2008)) is: (1) unconstitutional as it bears no reasonable relationship to a legitimate state interest; (2) overbroad as it criminalizes innocent conduct; and (3) unconstitutionally vague.  Defendant further claims that the State failed to prove him guilty beyond a reasonable doubt of possession of a methamphetamine precursor and that his convictions for both possession of methamphetamine and possession of a methamphetamine precursor cannot stand as they are lesser-included offenses of unlawful use of property.

FACTS

Fuller Fertilizer is located in Hancock County, just off Highway 96, about two miles north of the Adams County line. There is only one road in or out of the property.  A main building fronts the property, and the driveway leads past it and toward the back of the property.  In the back of the property,

2

there are several buildings, including a seed building, a fertilizer plant and several anhydrous ammonia wagons.

At about 10 p.m. on May 27, 2008, Jeffrey Donley, an employee of Fuller, reported to police that a small, white pick-up truck with a loud muffler had driven onto the company grounds with its lights off. The truck proceeded past the main building and up over a hill toward a large, open-ended Quonset hut.

Within 15 minutes, several officers arrived. Deputy Joshua Smith testified that, after speaking with Donley, he drove toward the back of the property. Deputy Mike Norris walked along the path the white truck had followed, carrying a rifle equipped with a flashlight. Two other officers used their squad cars to block the entrance to the grounds.

Deputy Smith drove through a grassy field, passed the ammonia wagons, and circled back toward the Quonset hut where he saw a white Ford Ranger pickup truck that was later determined to be registered to defendant. As Smith drove down a hill toward the Quonset hut, Norris radioed him to advise that the truck's engine had started. The truck then sped away and Smith, after activating his emergency lights, pursued the truck.

The driver of the truck turned its headlights on as it drove away from Smith. The driver nearly hit Deputy Norris with the

3

truck as Norris stood in a gravel parking lot on the grounds. Norris fired two shots at the truck: one struck the front fender and the other punctured the front driver's-side tire. The truck continued to head for the exit, forcing the police that were blocking it to back away to avoid being struck by the pickup.

Smith continued to follow the truck down Highway 96. Chunks of tire flew from the left front of the truck as it drove down the highway. During the chase, Smith witnessed the driver lean over to the passenger-side window, open it, and throw a blue container out of the window. A blue bowl containing suspected pseudoephedrine was found the next day in the area where Smith witnessed the driver of the truck jettison the blue object.

Smith followed the truck over the Adams County line, at which time the driver's-side front tire had come completely off the truck. Eventually, the truck stopped in a residential alley in Quincy, Illinois. Police then arrested the defendant driver. At the time of arrest, a white powder covered defendant as well as the front seat of the pickup. Deputy Norris collected the powder from the front seat.

Police later searched the Quonset hut and the area immediately surrounding it. They found a bucket, other containers, plastic gloves, salt, Coleman fuel, Liquid Fire, coffee filters,

4

side cutters, a pocket knife and battery peelings.  It is undisputed that all of the items found are items used in the manufacture of methamphetamine.

Joni Mitchell, a forensic scientist employed by the Illinois State Police, tested both the substance found on the front seat of the truck and the substance found in the bowl recovered from the side of the highway.  She determined that the substance found in the bowl was "1.9 grams of powder [that] does indeed contain methamphetamine and pseudoephedrine."  She could not determine what percentage of the substance was pseudoephedrine and what percentage was methamphetamine.  She explained that it is "pretty common to find in a methamphetamine sample, not all of the pseudoephedrine gets cooked up and so some of it is left behind. And we typically find it a lot of times with meth."  The substance recovered from the pickup truck weighed 3.1 grams and was determined to contain methamphetamine.

Ultimately, the jury acquitted defendant of the offenses of burglary and unlawful participation in methamphetamine manufacturing.  The jury found defendant guilty of unlawful use of property, unlawful possession of methamphetamine precursor, unlawful possession of methamphetamine, obstructing justice, aggravated fleeing or attempting to elude a police officer, and

aggravated assault.  Defendant filed a timely posttrial motion. After the trial court considered defendant's motion, it entered a judgment notwithstanding the verdict in favor of defendant on the aggravated assault charge.

At sentencing, the trial court found that defendant's criminal record mandated that he be sentenced as a Class X offender for the two Class 2 felonies: unlawful use of property and unlawful possession of methamphetamine precursor.  For these crimes, the trial court sentenced defendant to concurrent 20-year terms of incarceration.  The trial also sentenced defendant to a four-year term for unlawful possession of methamphetamine, a two-year term for obstructing justice, and a two-year term for aggravated fleeing and attempting to elude a peace officer.  All sentences imposed run concurrently.

Defendant filed a timely motion to reconsider sentence that the trial court denied.  This timely appeal followed.

ANALYSIS

A. Constitutionality Challenges

Section 35 of the Act states:

"(a) It is unlawful for a person
knowingly to use or allow the use of a
vehicle, a structure, real property, or

6

personal property within the person's control to help bring about a violation of this Act.

(b) A person who violates subsection (a) of this Section is guilty of a Class 2 felony."  720 ILCS 646/35 (West 2008).

Defendant argues this section is unconstitutional for several reasons.  He claims it: (1) bears no reasonable relationship to the interest intended to be protected; (2) is overbroad; and (3) is vague.  Our review of defendant's constitutional challenge is guided by familiar principles.  Statutes are presumed constitutional and the party challenging the constitutionality of a statute bears the burden of establishing its invalidity.  *People v. Wright*, 194 Ill. 2d 1, 740 N.E.2d 755 (2000).  The legislature has great discretion to establish penalties for criminal offenses, but this discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law.  *In re K.C.*, 186 Ill. 2d 542, 714 N.E.2d 491 (1999).

1. Rational Basis Test

When legislation does not affect a fundamental constitutional right, the rational basis test is used to determine

7

whether it complies with substantive due process requirements.
*People v. Hamm*, 149 Ill. 2d 201, 595 N.E.2d 540 (1992).  Under
this test, a statute will be upheld if it "bears a reasonable
relationship to a public interest to be served, and the means
adopted are a reasonable method of accomplishing the desired
objective."  *People v. Adams*, 144 Ill. 2d 381, 390, 581 N.E.2d
637, 642 (1991).  "In other words, the statute must be reasonably
designed to remedy the evils which the legislature has determined
to be a threat to the public health, safety and general welfare."
*People v. Falbe*, 189 Ill. 2d 635, 640, 727 N.E.2d 200, 204
(2000).

Our legislature stated that it enacted the Act for the
following reasons:

> "The purpose of this Act is to reduce the
> damage that the manufacture, distribution, and
> use of methamphetamine [is] inflicting on children,
> families, communities, businesses, the economy,
> and the environment in Illinois.  The General
> Assembly recognizes that methamphetamine is
> fundamentally different from other drugs regulated
> by the Illinois Controlled Substances Act because
> the harms relating to methamphetamine stem not

8

only from the distribution and use of the drug, but also from the manufacture of the drug in this State.  Because methamphetamine is not only distributed and used but also manufactured here, and because the manufacture of methamphetamine is extremely and uniquely harmful, the General Assembly finds that a separate Act is needed to address the manufacture, distribution, and use of methamphetamine in Illinois."  720 ILCS 646/5 (West 2008).

Defendant argues section 35 fails the rational basis test, "as it neither bears a reasonable relationship to the interest it was intended to protect, nor does it employ a reasonable method of furthering that interest."  Defendant notes the State charged him with violating section 35 by using his pickup truck to help bring about a violation of the Act.  This, defendant claims, penalized him for the lawful act of driving a vehicle "solely because that conduct occurred simultaneously with his possession of methamphetamine."  Noting that section 35 applies to all kinds of property, not just vehicles, defendant submits that there "is no rational relationship between reducing the harm caused by methamphetamine and the use of *any* property, real or personal, to

commit the offense, nor does prohibiting the use of any property further or protect a legitimate State interest."  (Emphasis in original.)

Intertwined with this constitutional argument are defendant's claims that section 35 is both overbroad and vague. Defendant argues that section 35 can bear no rational relationship to the purpose of the Act since "the use of any property, real or personal, sweeps too broadly and punishes innocent as well as culpable conduct, and [therefore] does not bear a reasonable relationship to the stated purpose of the Act."

In its response, the State claims that we "deal here only with the charged use of the pickup truck to help bring about a violation of the Act and need not be concerned with the use of other things stated in the statute to help bring about a violation of the Act."  Citing to *People v. Jordan*, 218 Ill. 2d 255, 843 N.E.2d 870 (2006), the State argues that unconstitutional provisions of a statute may be severed from the remainder of a statute if what remains is complete in and of itself and can be executed wholly independently of the severed part.  Therefore, the State suggests the only question properly before this court is the constitutionality of section 35's prohibition against one "knowingly" using a vehicle to bring about a violation of the

10

Act.  Defendant claims the State's severability argument is an acknowledgment that section 35 is unconstitutionally overinclusive as it effectively includes any person, such as the instant defendant, who possesses methamphetamine while in a car, on land, in a house, in a nonresidential building, while using any sort of tool or other object, or even, simply, while clothed.

We agree with the State that we need not address any provision in section 35 other than its reference to the use of a vehicle to bring about a violation of the Act.  We reach this conclusion not because of severability issues, but because that is the actual case that has been presented to us.  Our supreme court has clearly stated:

> "We cannot, and need not in this proceeding, pass upon all hypothetical situations and tenuous circumstances which may be presented by counsel.  While we recognize that a valid statute may be unconstitutionally applied, the precise limitations to be placed on the words in question can best be specified when actual cases requiring such interpretation are presented." *J.G. Stein v. Howlett*, 52 Ill.

11

2d 570, 580-81, 289 N.E.2d 409, 415 (1972).
See *Jacobs v. City of Chicago*, 53 Ill. 2d 412, 292 N.E.2d 401
(1973).

The "actual case" before us involves the State charging
defendant with bringing about a violation of the Act through the
use of his vehicle. Therefore, we find our inquiry is con-
strained to the consideration of whether section 35's proscrip-
tion on using a vehicle to bring about a violation of the Act
passes the rational basis test. Again, we must uphold the
statute if it bears a reasonable relationship to a public inter-
est to be served and the means adopted are a reasonable method of
accomplishing the desired objective. *Adams*, 144 Ill. 2d at 390,
581 N.E.2d at 642. In applying the rational basis test, "we must
identify the public interest the statute is intended to protect,
determine whether the statute bears a rational relationship to
that interest, and examine whether the method chosen to protect
or further that interest is reasonable." *People v. Boeckmann*,
238 Ill. 2d 1, 7, 932 N.E.2d 998, 1002 (2010). We hold the
statute satisfies this test.

While the Act is relatively new, becoming effective on
September 11, 2005, at least one other court has noted that its
"language shows the legislature intended to safeguard the public

12

welfare from the harm caused by manufacturing and distribution of methamphetamine." *People v. Willner*, 392 Ill. App. 3d 121, 124, 924 N.E.2d 1029, 1032 (2009). When removing methamphetamine-related crimes from the Illinois Controlled Substances Act and creating the Methamphetamine Control and Community Protection Act, our legislature specifically identified the unique nature of methamphetamine and the damage it causes within the State of Illinois. 720 ILCS 646/5 (West 2008). The legislature noted that methamphetamine is "fundamentally different from other drugs regulated" in Illinois as it is not only used and distributed here but also manufactured here. 720 ILCS 646/5 (West 2008). The legislature proclaimed that manufacturing the drug is so "extremely and uniquely harmful" that "a separate Act [was] needed to address" the evils associated with methamphetamine. 720 ILCS 646/5 (West 2008).

In our view, prohibiting the use of a vehicle to bring about a violation of the Act is a reasonable method of accomplishing the Act's desired objective: that is, reducing or eliminating methamphetamine-related crimes in the state and the corresponding harm caused by those crimes. We find section 35's proscription against using vehicles to bring about a violation of the Act is reasonably designed to remedy the evils that the legislature has

13

determined to be a threat to the public health, safety and general welfare of the state and is reasonably related to stopping the manufacturing and distribution of methamphetamine in the state. The legislature has the power to limit the use of a vehicle, or other property, that one intends to use to violate the Act. See *People v. Hickman*, 163 Ill. 2d 250, 644 N.E.2d 1147 (1994) (the legislature has the power to declare and define criminal conduct and to determine the type and extent of punishment for it).

Our holding finds support from *People v. McCarty*, 223 Ill. 2d 109, 858 N.E.2d 15 (2006). In *McCarty,* when presented with a challenge that a specific methamphetamine law was not reasonably designed to remedy the particular evil that the legislature targeted when enacting it, our supreme court gave great deference to the legislature. In *McCarty*, defendants manufactured a substance containing methamphetamine but did not produce any "usable methamphetamine." *McCarty*, 223 Ill. 2d at 135, 858 N.E.2d at 32. The *McCarty* defendants did not present the exact same challenge as defendant herein, but they did argue that, since they produced no usable methamphetamine, "their 15-year minimum sentences are not reasonably designed to remedy the harm the legislature sought to address" when establishing the

14

methamphetamine laws. *McCarty*, 223 Ill. 2d at 135, 858 N.E.2d at 32. Our supreme court disagreed and noted that the "legislature could reasonably have concluded that punishing manufacturers of methamphetamine with a strict penalty, regardless of the ultimate success of their enterprise, discourages even casual experimentation with producing the drug, thereby reducing the quantity of the drug available to individuals with no 'legitimate reason to possess' it [citation], and preventing its 'unlawful and destructive abuse.' [citation]." *McCarty*, 223 Ill. 2d at 139-40, 858 N.E.2d at 34.

Similarly, the legislature could reasonably have concluded that punishing those who use vehicles to help bring about a violation of the Act discourages transport associated with producing or distributing the drug, thereby reducing the quantity of the drug available. As such, we reject defendant's claim that section 35 "neither bears a reasonable relationship to the interest it was intended to protect, nor [employs] a reasonable method of furthering that interest."

### 2. Vagueness

We also find defendant's claim of vagueness to be without merit. The determination of whether a statute is void for vagueness must be made in the factual context of each case.

15

*Falbe*, 189 Ill. 2d at 639, 727 N.E.2d at 203-04.

> "In order to satisfy constitutional principles of due process, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly, and provide explicit standards for those police officers, judges and juries who apply it in order to prevent arbitrary and discriminating enforcement. [Citations.] Where, as here, no first amendment concern is implicated, there is no right to challenge the statute as being vague on its face if it clearly applies to defendants' conduct. [Citation.] Thus, the issue is whether [the statute] is unconstitutionally vague as applied to the conduct for which *these* defendants were prosecuted." (Emphasis in original.) *People v. Conlan*, 189 Ill. 2d 286, 292, 725 N.E.2d 1237, 1240 (2000).

Defendant does not argue that the sections of the Act that prohibit participating in methamphetamine manufacturing (720 ILCS

16

646/15 (West 2008)), possessing a methamphetamine precursor with the intent to manufacture methamphetamine (720 ILCS 646/20 (West 2008)), or simple possession of methamphetamine (720 ILCS 646/60 (West 2008)) are vague. Defendant simply submits that section 35 is vague as it "is unclear whether this section aims to prevent one from assisting another, or whether it means that a person cannot use any property, real or personal, to himself commit a separate violation of the Act."

A statute is not unconstitutionally vague if it gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly, and provides explicit enough standards for those police officers, judges, and juries who apply them in order to prevent arbitrary and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 227-28, 92 S. Ct. 2294, 2298-99. Section 35 is sufficiently clear to provide a person of ordinary intelligence with fair notice that, if he uses a vehicle to bring about a violation of the Act, he violates that section of the Act and, therefore, commits a Class 2 felony.

We also reject defendant's contention that section 35 encourages arbitrary and discriminatory enforcement. Defendant notes that section 35 "allows the prosecutor to enhance, for

17

example, simple possession of less than 5 grams of methamphetamine from a Class 3 felony to a Class 2 felony simply because a person possesses methamphetamine while driving a car, as occurred in the instant case."

When considering similar challenges, our supreme court has invalidated penal legislation when "a criminal ordinance vests unfettered discretion in the police to determine whether a suspect's conduct has violated the ordinance" *(City of Chicago v. Morales*, 177 Ill. 2d 440, 457, 687 N.E.2d 53, 63 (1997)), as such legislation  "'entrust[s] lawmaking "to the moment-to-moment judgment of the policeman on his beat."'"  (*Morales*, 177 Ill. 2d at 457, 678 N.E.2d at 63, quoting *Smith v. Goguen*, 415 U.S. 566, 575, 39 L. Ed. 2d 605, 613, 94 S. Ct 1242, 1248 (1974), quoting *Gregory v. City of Chicago*, 394 U.S. 111, 120, 22 L. Ed. 2d 134, 141, 89 S. Ct. 946, 951 (1969)).

Section 35 is not a statute that encourages arbitrary enforcement like others that penalized "rogues," "vagabonds," or "habitual loafers."  See *Kolender v. Lawson*, 461 U.S. 352, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983); see also *Papachristou v. City of Jacksonville*, 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972).  In the context of the facts before us, section 35 does not allow police or prosecutors to detain or prosecute people

18

"practically at their whim." *People v. Anderson*, 148 Ill. 2d 15, 30, 591 N.E.2d 461, 468 (1992).  As such, we see no danger of arbitrary enforcement of section 35's prohibition against using a vehicle to bring about a violation of the Act.  This prohibition makes clear that charges may be brought only when there is probable cause to believe one has violated the Act and used a vehicle to do so.

### 3.  Overbreadth

We are also not persuaded by defendant's overbreadth challenge.  Defendant argues that section 35 is "overbroad" in that "it is impossible to conceive of a way to violate any other Section fo the Act without also violating [section] 35.  In this fashion, Section []35 is overbroad."  We disagree.  Defendant has cited no case law supporting this contention.  The United States Supreme Court noted that, "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124, 156 L. Ed. 2d 148, 160, 123 S. Ct. 2191, 2199 (2003).  Defendant's first amendment rights are not implicated in this matter and he cites no authority to even suggest an overbreadth challenge is applicable in this instance.

19

Furthermore, it is certainly not overbroad in the context of the instant facts. It is quite easy to conceive of violations of the Act that do not involve the use of a vehicle.

## B. Sufficiency of the Evidence

Defendant next contends that the State failed to prove him guilty of possession of precursor with intent to manufacture methamphetamine beyond a reasonable doubt. Defendant argues that his claim regarding the evidence adduced at trial "does not entail any assessment of the credibility of witnesses, but only the determination [of] whether a certain set of facts sufficed to meet the State's burden of proof," and therefore, our review is *de novo*. We disagree. As detailed below, the State and defendant cite to very different pieces of evidence when arguing about whether the State proved each essential element of the offense beyond a reasonable doubt. Defendant discusses what certain evidence "suggested" and the State refers to "reasonable inferences" to be drawn from other evidence. Our standard of review on this issue is to decide, after reviewing the evidence in the light most favorable to the prosecution, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 818 N.E.2d 304 (2004).

20

Defendant argues no rational trier of fact could have made such a finding concerning his conviction for possession of a methamphetamine precursor with intent to manufacture methamphetamine in violation of section 20(b)(1) of the Act. Section 20(b)(1) states:

> "It is unlawful to knowingly possess, procure, transport, store, or deliver any methamphetamine precursor or substance containing any methamphetamine precursor in any form other than a standard dosage form with the intent that it be used to manufacture methamphetamine or a substance containing methamphetamine."  720 ILCS 646/20(b)(1) (West 2008).

Defendant claims that he "cannot truly be said to have possessed" a precursor since the "forensic scientist suggested that defendant possessed [actual] methamphetamine, and that the methamphetamine contained [the] precursor, an ingredient that had not been fully integrated into the methamphetamine."  Defendant is referring to Joni Mitchell's testimony in which she described the substance recovered from both the front seat of defendant's pickup and the blue bowl as containing both methamphetamine and

21

pseudoephedrine. Mitchell also noted that she could not determine what percentage of the substance was methamphetamine and what percentage was pseudoephedrine, but that, much of the time, not all the pseudoephedrine gets cooked up and some is left behind after the manufacturing process."

Defendant argues this testimony, at best, shows that any precursor (pseudoephedrine) he did possess was not intended to be used to manufacture additional methamphetamine but was, instead, merely not fully cooked in the methamphetamine he already possessed. The flaw in defendant's argument is, as the State indicates, that he fails to consider both the possession of the precursor, pseudoephedrine, and the intent to manufacture in the context of all the evidence.

It is undisputed that a number of manufacturing materials were found at the Quonset hut. These materials included a bucket and other containers, plastic gloves, salt, Coleman fuel, Liquid Fire, coffee filters, side cutters, a pocket knife and battery peelings. Defendant neither disputes these items were found in an area in which he was seen nor that they are used to manufacture methamphetamine. The State notes this is not a situation in which a defendant is caught merely possessing a bag of methamphetamine. Defendant possessed both methamphetamine and

22

pseudoephedrine after leaving an area that, unquestionably, had been used to manufacture methamphetamine. From these facts, the State argues, the jury could have reasonably inferred that defendant was interrupted in his manufacturing of methamphetamine and, given his flight and choice to retain possession of that pseudoephedrine, intended to manufacture it later. We agree and, therefore, find that when we view the evidence in the light most favorable to the prosecution, the State proved beyond a reasonable doubt all the essential elements necessary to convict defendant of violating section 20(b)(1) of the Act. 720 ILCS 646/20(b)(1) (West 2008).

C. One-Act, One-Crime Challenges

Defendant's final contention is that his convictions for possession of methamphetamine and unlawful possession of methamphetamine precursor with intent to manufacture must be vacated as lesser-included offenses of unlawful use of property. Defendant acknowledges he failed to raise this issue below, but invites us to review it as plain error. The State agrees that if the conviction for unlawful use of property is affirmed, we must vacate the conviction for possession of methamphetamine and methamphetamine precursor as lesser-included offenses.

It is well settled that the plain error doctrine allows a

23

reviewing court to consider unpreserved errors when a clear and obvious error occurs and the evidence is closely balanced so that the error alone threatened to tip the scales of justice against defendant. *People v. Lewis*, 234 Ill. 2d 32, 912 N.E.2d 1220 (2009). A court of review may also consider unpreserved errors when a clear and obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Lewis*, 234 Ill. 2d at 42-43, 912 N.E.2d at 1226-27.

Our supreme court is clear that an "alleged one-act, one-crime violation and the potential for a surplus conviction and sentence affects the integrity of the judicial process, thus satisfying the second prong of the plain error rule." *People v. Harvey*, 211 Ill. 2d 368, 389, 813 N.E.2d 181, 194 (2004). As such, we will address defendant's claims that his convictions for unlawful possession of methamphetamine and unlawful possession of methamphetamine precursor with the intent to manufacture must be vacated given his conviction and sentence for unlawful use of property.

One-act, one-crime analysis involves two steps: (1) the reviewing court must determine whether the defendant's conduct

24

consisted of one physical act or separate physical acts and, if the court concludes that the conduct consisted of separate acts; then, (2) the court must determine whether any of those offenses are lesser-included offenses. *In re Rodney S.*, 402 Ill. App. 3d 272, 932 N.E.2d 588 (2010). As this court has noted, an "act" is any "'overt or outward manifestation which will support a different offense.'" *People v. Horrell*, 381 Ill. App. 3d 571, 573-74, 885 N.E.2d 1218, 1221 (2008), quoting *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45 (1977). "Multiple convictions are improper if they are based on precisely the same physical act." *People v. Artis*, 232 Ill. 2d 156, 165, 902 N.E.2d 677, 683 (2009).

Defendant's conviction for unlawful possession of methamphetamine precursor was based on evidence that defendant knowingly possessed or stored pseudoephedrine with the intent that less than 10 grams of methamphetamine be manufactured in violation of section 20(b)(1) of the Act. As noted above in subsection B, the State proved defendant guilty of this crime beyond a reasonable doubt.

Defendant's conviction for unlawful possession of methamphetamine was based on evidence that defendant unlawfully and knowingly possessed less than five grams of methamphetamine

25

or a substance containing methamphetamine in violation of section 60(a) of the Act. Defendant does not challenge the sufficiency of the evidence on this charge.

Defendant's conviction for unlawful use of property indicate that defendant, in violation of section 35(a) of the Act, unlawfully and knowingly used his 1990 Ford Ranger pickup truck to help bring about a violation of the Act, possession of methamphetamine.

Defendant's convictions are based on three separate acts: possessing pseudoephedrine, possessing methamphetamine, and using a vehicle to help possess methamphetamine. The three counts and convictions are not based on "precisely the same physical act." As such, defendant's convictions only violate one-act, one-crime principles if one is a lesser-included offense of the other.

To determine whether defendant's convictions for possession of methamphetamine precursor and/or possession of methamphetamine are lesser-included offenses of unlawful use of property, we employ the abstract elements approach. *People v. Miller*, No. 107878 (September 23, 2010). "Under the abstract elements approach, a comparison is made of the statutory elements of the two offenses. If all of the elements of one offense are included within a second offense and the first offense contains no element

26

not included in the second offense, the first offense is deemed a lesser-included offense of the second. *** In other words, it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Miller*, slip op. at 4.

The instruction tendered to the jury concerning unlawful use of property parroted the statutory elements but also identified only possession of methamphetamine as the predicate violation of the Act. The jury instruction reads as follows:

> "A person commits the offense of unlawful use of property when he knowingly uses or allows the use of a vehicle within his control to help bring about a violation of Methamphetamine Control and Community Protection Act, being the unlawful possession of methamphetamine.
>
> A vehicle within his control means the power or authority to direct, restrict or regulate the use of the vehicle."

All of the elements of possession of methamphetamine are included in defendant's conviction for unlawful use of property. As such, we vacate defendant's conviction for possession of

27

methamphetamine and remand to the circuit court to revise the sentencing order to reflect the same. However, we disagree with the State and defendant that defendant's conviction for possession of methamphetamine precursor must be vacated. We acknowledge that the State confesses error on this issue. Nevertheless, as a court of review, we are not bound by a party's concession (*People v. Horrell*, 235 Ill. 2d 235, 919 N.E.2d 952 (2009); *People v. Kliner*, 185 Ill. 2d 81, 705 N.E.2d 850 (1998)) and may affirm the trial court's ruling on any grounds evident in the record (*Gunthorp v. Golan*, 184 Ill. 2d 432, 704 N.E.2d 370 (1998); *Fitch v. McDermott, Will & Emery, LLP,* 401 Ill. App. 3d 1006, 929 N.E.2d 1167 (2010); *Brandon v. Bonell*, 368 Ill. App. 3d 492, 858 N.E.2d 465 (2006)).

The instruction given to the jury makes it evident to us that defendant's conviction for unlawful use of property is based on the use of his vehicle while possessing methamphetamine, and only methamphetamine. While defendant's conviction for unlawful use of property fully encompassed his conviction for possession of methamphetamine, in that it included every element of that crime, his unlawful use of property conviction is unrelated to the separate act of possession of a methamphetamine precursor. None of the elements of possession of a methamphetamine precursor

28

laid the groundwork for defendant's conviction of unlawful use of property; his unlawful use of property conviction would stand even had he not possessed the pseudoephedrine.  As such, defendant's conviction for possession of methamphetamine precursor is not a lesser-included offense of his unlawful use of property conviction.

We note that had the unlawful use of property charge been predicated on the unlawful possession of a methamphetamine precursor, the result would have been different.  We do not suggest that possession of the precursor cannot be a lesser-included offense of unlawful use of property.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Hancock County is affirmed with the exception of defendant's conviction for possession of methamphetamine (720 ILCS 646/60(a) West 2008)), which the parties and we agree must be, and is, vacated as a lesser-included offense of unlawful use of property. This cause is remanded to the circuit court to modify its sentencing order consistent with this opinion.

Affirmed in part and vacated in part; cause remanded with directions.

CARTER and O'BRIEN, JJ., concur.

29