(278 P.3d 968)

No. 105,495

STATE OF KANSAS, *Appellee*, v. KEVIN TETER, *Appellant*.

—

Opinion filed May 11, 2012.

*Sam S. Kepfield*, of Hutchinson, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., PIERRON and BRUNS, JJ.

MALONE, J.: Kevin Teter appeals his conviction of one count of unlawful acquisition of pseudoephedrine in violation of K.S.A. 2007 Supp. 65-7006(d) (now codified at K.S.A. 2011 Supp. 21-5709[d]). This statute makes it unlawful for any person to purchase more than 3.6 grams of pseudoephedrine base or ephedrine base in any transaction or to purchase more than 9 grams of pseudoephedrine base or ephedrine base within a 30-day period. Teter argues that the statute is unconstitutionally vague and overbroad. For the reasons set forth herein, we reject Teter's constitutional challenges and conclude that the statute is rationally related to the legitimate interest of preventing the manufacture of methamphetamine in Kansas.

In early 2008, Reno County Sheriff's Deputy Rick Newton was assigned the task of visiting pharmacies in Reno County and examining the purchase logs they are required to keep by law. Newton's investigation uncovered the fact that Teter had purchased 322 tablets of pseudoephedrine-based medication during a 24-day period in January 2008. Specifically, the purchase logs disclosed that on January 4, 2008, Teter purchased one package of Genaphed from the Medicine Shoppe containing twenty-four 30-milligram tablets. On January 12, 2008, Teter purchased two packages of Equate Suphedrine from Wal-Mart, each containing forty-eight 30-milligram tablets. On January 21, 2008, Teter purchased one package of Sudafed from Dillon's #25 containing ten 240-milligram tablets. On January 28, 2008, Teter purchased two packages of Kroger Suphedrine from Dillon's #10, each containing forty-eight 30-milligram tablets. On the same day, Teter purchased two additional packages of Equate Suphedrine from Wal-Mart, each containing forty-eight 30-milligram tablets.

On June 11, 2008, Teter was charged with unlawful acquisition of pseudoephedrine, a Class A misdemeanor, by purchasing more than 9 grams of pseudoephedrine base within a 30-day period. Teter was found guilty following a bench trial before a district magistrate judge, and he appealed to the district court. On September 29, 2010, Teter filed a motion to dismiss before the district court, arguing that K.S.A. 2007 Supp. 65-7006(d) is unconstitutionally vague because the average citizen would not know how

much pseudoephedrine base or ephedrine base was contained in cold or allergy medication sold in conventional blister packaging. Teter also argued that the statute is unconstitutionally overbroad because it criminalizes potentially legitimate activity. No hearing on the motion was requested.

A bench trial was held on November 19 and December 6, 2010. Newton testified for the State about his investigation into Teter's purchases of pseudoephedrine-based medication. Newton explained that he calculated the total amount of pseudoephedrine base Teter purchased by multiplying the number of tablets by the milligrams of active ingredient (here, pseudoephedrine hydrochloride) in each tablet and then converting the resulting number from milligrams to grams. To reduce this number to the pure anhydrous pseudoephedrine base—that is, to discount the weight of the hydrochloride salt—Newton then applied a conversion factor of .82, which is the conversion factor promulgated by the International Narcotics Control Board to be applied when pseudoephedrine is bound with a hydrochloride salt. Using this methodology, Newton determined that Teter had purchased 9.6432 grams of pure pseudoephedrine base during the time period in question.

The State also presented the testimony of several witnesses from the stores where Teter had allegedly purchased the pseudoephedrine-based medications. The store representatives verified that they followed the protocol for selling such medications, which included recording the name, address, and signature of the purchaser as well as checking photo identification. Although some of the store representatives were familiar with Teter, none had independent recollections of the alleged purchases. Teter did not present any evidence at the trial.

During closing argument, Teter asked that the case be dismissed. He reiterated the overbreadth argument made in his motion to dismiss and noted that the statute could also reach people who purchased pseudoephedrine-based medications for legitimate use by their family or friends. In the alternative, he argued that the State had failed to prove the charge beyond a reasonable doubt, challenging the adequacy of the foundation laid for the conversion

factor used by Newton and the accuracy of the purchase records. The district court overruled the motion to dismiss and stated:

"[W]ith respect [to] the constitutionality of the statute I reviewed that motion. The argument as I understand it is [the statute] really doesn't give people fair notice. Well, it does because . . . it proscribes [the] possession of more than nine grams. If there's any confusion, it's—you can buy a lot more than nine grams of the active ingredient without violating the statute because there's a conversion factor. So any [confusion] about that works in favor of the defendant. But it's pretty clear."

The district court then found that an adequate foundation had been laid for the conversion factor and that the purchase records were reliable evidence that Teter had made the purchases. The district court found Teter guilty as charged and sentenced him to 12 months in the county jail with probation. Teter timely appealed his conviction.

On appeal, Teter argues that K.S.A. 2007 Supp. 65-7006(d) is unconstitutionally vague because an ordinary person would not be expected to know the conversion factor that is used to determine how much pseudoephedrine base or ephedrine base is contained in cold or allergy medication sold in conventional blister packaging and thus there is no fair warning as to the amount of medication that would trigger the statute. He also argues that the statute is unconstitutionally overbroad because it does not distinguish between the acquisition of pseudoephedrine base or ephedrine base for legal but potentially off-label purposes, such as weight loss or bodybuilding, and illegal purposes, namely the manufacture of methamphetamine. Although Teter objected to some of the evidence presented by the State at his bench trial based on lack of foundation, he has not raised this issue on appeal. An issue not briefed by the appellant is deemed waived and abandoned. *State v. McCaslin*, 291 Kan. 697, 709, 245 P.3d 1030 (2011).

The State contends that K.S.A. 2007 Supp. 65-7006(d) is not unconstitutionally vague because the 9-gram limitation in the statute is unambiguous and, even if an ordinary person were unaware of the conversion factor, the application of that conversion factor weighs in favor of the defendant. The State further contends that the statute is not unconstitutionally overbroad because the acqui-

sition of more than 9 grams of pseudoephedrine base or ephedrine base within a 30-day period is not a constitutionally protected activity and because there is a rational relationship between the limitation and the legitimate goal of preventing the manufacture of methamphetamine.

K.S.A. 2007 Supp. 65-7006(d) provides as follows:

"It shall be unlawful for any person to purchase, receive or otherwise acquire at retail any compound, mixture or preparation containing more than 3.6 grams of pseudoephedrine base or ephedrine base in any single transaction or any compound, mixture or preparation containing more than nine grams of pseudoephedrine base or ephedrine base within any 30-day period."

The interpretation of a statute and the determination of its constitutionality are questions of law over which an appellate court has unlimited review. Whenever a court considers the constitutionality of a statute, the separation of powers doctrine requires the court to presume the statute is constitutional. Consistent with this principle, all doubts must be resolved in favor of the statute's validity, and a court must interpret the statute in a manner that makes it constitutional if there is any reasonable way to do so within the apparent intent of the legislature in passing the statute. *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 (2009).

As a preliminary matter, the State asserts that Teter's constitutional claims have not been preserved for appellate review because the State was given no notice that Teter's motion to dismiss would be considered at the close of evidence at trial and the State was deprived of the opportunity to present evidence on the constitutional issues. But the motion to dismiss was filed in advance of the bench trial and provided to the State. Furthermore, the State does not indicate on appeal what additional evidence it would have presented at trial in order to address the motion. Teter clearly raised the constitutionality of the statute before the district court, both with respect to vagueness and overbreadth, and we conclude the constitutional issues have been preserved for appeal.

Turning to the merits of the parties' arguments, Teter first contends that K.S.A. 2007 Supp. 65-7006(d) is unconstitutionally vague. A claim that a statute is void for vagueness necessarily requires a court to interpret the language of the statute in question

to determine whether it gives adequate warning as to the proscribed conduct. A statute that either requires or forbids the doing of an act in language that is so vague that persons of common intelligence must guess at its meaning and will differ as to its application violates the Fourteenth Amendment to the United States Constitution and is thus void for vagueness. *State v. Richardson,* 289 Kan. 118, 124, 209 P.3d 696 (2009). In determining whether a statute is void for vagueness, two inquiries are appropriate: (1) whether the statute gives fair warning to those persons potentially subject to it and (2) whether the statute adequately guards against arbitrary and discriminatory enforcement. *City of Wichita v. Wallace,* 246 Kan. 253, 259, 788 P.2d 270 (1990).

Teter's vagueness argument is centered on his contention that an ordinary person would not be expected to know the conversion factor that is used to determine how much pseudoephedrine base or ephedrine base is contained in cold or allergy medication because the method of applying the conversion factor is not listed on the packaging. The State responds that there is nothing about the language of the statute itself that is vague and, even if an ordinary person were unaware of the conversion factor, the application of the conversion factor weighs in favor of the defendant. Neither party cites any caselaw, and the question raised—whether a statute prohibiting the acquisition of a certain weight of a nonprescription drug is unconstitutionally vague where the drug is sold in a form that contains other, nonregulated ingredients—appears to be an issue of first impression not only in Kansas but across the country as well.

K.S.A. 2007 Supp. 65-7006(d) was first enacted by the Kansas Legislature in May 2007. L. 2007, ch. 139, § 13. It appears to be based upon a similar provision enacted by the United States Congress in 2006 as part of the Combat Methamphetamine Epidemic Act of 2005 (CMEA). 21 U.S.C. § 844(a) (2006) ("It shall be unlawful for any person to knowingly or intentionally purchase at retail during a 30 day period more than 9 grams of ephedrine base, pseudoephedrine base, or phenylpropanolamine base in a scheduled listed chemical product . . . ."). For an overview of the CMEA and of various state statutes regulating the sale of methampheta-

mine precursor drugs such as pseudoephedrine, see Comment, *The Combat Methamphetamine Epidemic Act: New Protection or New Intrusion?*, 39 Tex. Tech L. Rev. 379 (2007). For an overview of the problem in Kansas, see Peterson & Jennings, *Methamphetamine-A Recipe for Disaster*, 73 J.K.B.A. No. 9, 7 (2004).

The State's argument that K.S.A. 2007 Supp. 65-7006(d) is not unconstitutionally vague is persuasive. There is nothing in the language of the statute, which clearly prohibits the acquisition of more than 3.6 grams of pseudoephedrine base or ephedrine base in any one transaction or more than 9 grams in any 30-day period, that would leave persons of common intelligence guessing as to what is prohibited or that would be open to arbitrary and discriminatory enforcement. To the extent that there is any ambiguity because a person of common intelligence may not know how the weights are calculated, that ambiguity is external to the statute and may likewise be clarified by outside information. The milligrams of active ingredient (*e.g.*, pseudoephedrine hydrochloride) are available on the medication packaging. While the amount of pure anhydrous pseudoephedrine base or ephedrine base may not be specifically listed on the medication packaging itself, detailed information concerning acquisition limitations is available to the general public. See Drug Enforcement Administration, General Information Regarding the Combat Methamphetamine Epidemic Act of 2005 (Title VII of Public Law 109-177) (May 2006), *http://www.deadiversion.usdoj.gov/meth/cma2005_general_info.pdf.* Furthermore, the conversion factors promulgated by the International Narcotics Control Board, referred to by Newton in his trial testimony, are made available to the public at *http://www.incb.org/pdf/e/list/red.pdf.* A review of this information confirms that the conversion factor for pseudoephedrine hydrochloride is indeed .82, as Newton testified.

Moreover, as the State notes, any ambiguity regarding how the weights are calculated favors the criminal defendant. A person of common intelligence, following common understanding and practice, would most likely count the entire weight of the active ingredient as listed on the medication packaging when determining whether he or she was exceeding the acquisition limitations. If such

person acquired 9 grams of pseudoephedrine hydrochloride as listed on the medication packaging, he or she still would be within the permissible statutory limitation due to the application of the conversion factor to exclude the weight of the hydrochloride salt. In Teter's case, he actually purchased 11.76 grams of pseudoephedrine hydrochloride within a 30-day period, but this amounted to only 9.6432 grams of pure pseudoephedrine base during the time period in question. By simply keeping track of the weight of the active ingredient listed on the medication packaging, a consumer cannot accidentally exceed the limitations set forth in the statute. Because K.S.A. 2007 Supp. 65-7006(d) gives adequate warning as to the proscribed conduct, we conclude the statute is not unconstitutionally vague.

Teter also contends that the statute is unconstitutionally overbroad because it fails to distinguish between the acquisition of pseudoephedrine base or ephedrine base for legal purposes and for illegal purposes and therefore criminalizes potentially legitimate activity. While a vague statute leaves persons of common intelligence to guess at its meaning, an overbroad statute makes conduct punishable which under some circumstances is constitutionally protected. Almost every law is potentially applicable to constitutionally protected acts. A successful overbreadth challenge can be made only when (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing the law's constitutional from its unconstitutional applications. *State v. Whitesell*, 270 Kan. 259, 270, 13 P.3d 887 (2000). The overbreadth doctrine should be employed sparingly and only as a last resort. *Smith v. Martens*, 279 Kan. 242, 253, 106 P.3d 28 (2005).

The Kansas Supreme Court recently visited the overbreadth doctrine in *Dissmeyer v. State*, 292 Kan. 37, 249 P.3d 444 (2011). In 2007, the Kansas Legislature passed the Kansas Expanded Lottery Act (Act). K.S.A. 2007 Supp. 74-8733 *et seq.* The Act authorized the operation of certain gaming facilities, electronic gaming machines, and other lottery games, but the Act specifically outlawed ownership of and public access to "gray machines." K.S.A. 2007 Supp. 74-8761. "Gray machine" was defined to mean

"any mechanical, electro-mechanical or electronic device, *capable of being used for gambling*, that is: (1) Not authorized by the Kansas lottery, (2) not linked to a lottery central computer system, (3) available to the public for play or (4) capable of simulating a game played on an electronic gaming machine or any similar gambling game authorized pursuant to the Kansas expanded lottery act." (Emphasis added.) K.S.A. 2007 Supp. 74-8702(g).

In *Dissmeyer*, the Supreme Court found that the phrase "capable of being used for gambling" in the provision defining gray machines potentially criminalized the use of such equipment as computers, telephones, radios, televisions, and even the classic children's game of Chutes and Ladders. 292 Kan. at 42. The Supreme Court determined that the statute defining gray machines, in combination with its enforcement provisions, made it unlawful to own or operate a broad spectrum of property that does not relate to a legitimate government interest in controlling gambling. 292 Kan. at 42-44. Thus, the Supreme Court held those statutory provisions, as they relate to gray machines, were unconstitutionally overbroad. 292 Kan. at 44.

*Dissmeyer* is clearly distinguishable from the facts herein. In *Dissmeyer*, the expansive definition of gray machines made it unlawful to own or operate a broad spectrum of property that under some circumstances is constitutionally protected. Here, K.S.A. 2007 Supp. 65-7006(d) is narrowly tailored to criminalize the purchase of more than 3.6 grams of pseudoephedrine base or ephedrine base in any single transaction or the purchase of 9 grams of pseudoephedrine base or ephedrine base within any 30-day period. Recognizing that the Constitutions of the United States and Kansas protect the right of citizens to engage in commerce, K.S.A. 2007 Supp. 65-7006(d) still allows any person to purchase a sufficient quantity of pseudoephedrine for legitimate personal use during a 30-day period. In Teter's case, he purchased 322 tablets of pseudoephedrine- based medication during a 24-day period, and even this large quantity amounted to only 9.6432 grams of pure pseudoephedrine base—barely over the legal limit.

As courts have recognized, almost every law is potentially applicable to constitutionally protected acts, and the overbreadth argument should be applied sparingly and only as a last resort. See,

*e.g., Martens*, 279 Kan. at 253. Here, there is no substantial intrusion upon an individual's liberty by limiting the amount of pseudoephedrine which can be purchased to 3.6 grams in any transaction or 9 grams within a 30-day period. We conclude that K.S.A. 2007 Supp. 65-7006(d) is not unconstitutionally overbroad.

As the State implicitly recognizes, Teter's overbreadth argument is better characterized as a due process challenge to the validity of the statute. Because Teter does not allege that the statute infringes upon a fundamental right or involves a suspect classification, the rational basis test—the lowest level of judicial scrutiny—applies to determine whether K.S.A. 2007 Supp. 65-7006(d) violates due process. Under the rational basis test, a statute will survive a due process challenge if it furthers a legitimate goal and the means chosen by the legislature are rationally related to that goal. See *State v. Voyles*, 284 Kan. 239, 258, 160 P.3d 794 (2007).

When read as a whole, it is clear that the legislative intent of K.S.A. 2007 Supp. 65-7006 is to prevent the manufacture of controlled substances, particularly methamphetamine, which is clearly a legitimate goal. To advance that goal, the Kansas Legislature chose to limit the availability of pseudoephedrine and ephedrine, which are precursor drugs essential to the manufacture of methamphetamine. The Kentucky Court of Appeals, in evaluating the constitutionality of a similar Kentucky statute, found that an acquisition limitation of 9 grams of pseudoephedrine in a 30-day period was neither constitutionally unreasonable nor arbitrary. The court noted that to exceed the statutory limit, an individual would have to purchase over three-hundred 30-milligram tablets. *Pitcock v. Commonwealth*, 295 S.W.3d 130, 134 (Ky. App. 2009), *rev. denied* October 21, 2009. The Appellate Court of Illinois found that an Illinois statute criminalizing the purchase of more than 7,500 milligrams (7.5 grams) of pseudoephedrine in a 30-day period was not "unreasonable merely because some purchasers without the intent to manufacture methamphetamine might violate its terms or suffer inconvenience." *People v. Willner*, 392 Ill. App. 3d 121, 126, 924 N.E.2d 1029 (2009), *rev. denied* September 30, 2009.

Likewise, the acquisition limitations put in place by the Kansas Legislature in K.S.A. 2007 Supp. 65-7006(d) promote the legiti-

mate goal of preventing the manufacture of methamphetamine in Kansas. Teter makes no attempt to challenge this contention. The acquisition limits set forth in the statute are rationally related to this goal and do not substantially intrude upon an individual's right to purchase pseudoephedrine-based medication for legitimate personal use. Therefore, we conclude the statute does not unconstitutionally violate due process.

Affirmed.