NOT DESIGNATED FOR PUBLICATION

No. 119,914

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DARREN LEE POWELL,
*Appellant*.


MEMORANDUM OPINION

Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Opinion filed November 8, 2019. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Patrick E. Henderson*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., BRUNS, J., and WALKER, S.J.


PER CURIAM: Darren Lee Powell appeals after a jury convicted him of felony fleeing or attempting to elude a police officer and other charges. On appeal, Powell argues that the district court erred by denying his untimely request to endorse an alibi witness to testify at trial. Powell also contends that the fleeing and eluding statute is unconstitutionally vague and that the district court erred in instructing the jury. Finally, Powell claims cumulative error deprived him of a fair trial. Finding no reversible error and that Powell received a fair trial, we affirm his convictions.

1

In the early morning hours of October 16, 2017, Atchison Police Officer Brian Johnson approached the intersection of North 10th and Division Streets in his marked patrol vehicle. The officer saw an older model truck turn right onto 10th Street. As the truck was turning, Officer Johnson could see that the driver was Darren Powell—with whom he had several previous encounters over the past several years. Officer Johnson could not see whether there was a passenger in the cab with Powell.

Because he believed that Powell was driving on a suspended driver's license, Officer Johnson asked dispatch to check on the status of his license and to see if he had any outstanding warrants. As Johnson proceeded northbound on 10th Street, the officer read the truck's license plate number and he gave it to the dispatcher as well. As the truck approached 10th and Santa Fe Streets, the dispatcher confirmed that suspension of Powell's driver's license. The dispatcher also informed Officer Johnson that the truck was a 1990 Chevy Silverado registered to Virgil Stewart.

Officer Johnson saw the truck run a stop sign at the intersection of 10th Street and Commercial Street without slowing down. He then observed the truck—which was picking up speed—run a red light at 10th Street and Main Street. At this point, the officer activated his lights and sirens to pursue the truck and notified the dispatcher as well as other officers of the pursuit. According to Officer Johnson, "once he ran the red light at [10th] and Main, I knew he was running from me. That's when I let everybody know that I was in a pursuit for him."

Officer Johnson then observed the truck run another red light at 10th Street and Highway 59. The driver also failed to use his left-hand turn signal as he turned the truck onto eastbound Highway 59. During the pursuit, Officer Johnson estimated that he was traveling around 70 to 75 miles per hour. Even so, he was "not even getting close to

catching up" to the truck as it continued to travel eastbound through the intersection at 6th Street and Highway 59.

Meanwhile, Officer Kyle Mason went to the foot of the bridge on Highway 59 that leads across the Missouri River. Officer Mason attempted to put spike strips down on the highway to deflate the truck's tires, but he could not do so as the truck sped by him. According to Officer Mason, the truck swerved across the center line on Highway 59 and headed toward oncoming traffic in the westbound lane to avoid the spikes. The officer also believed that the truck was travelling well over the 35-mile-per-hour posted speed limit and did not slow down as it approached the officer's position.

After avoiding the spike strips, the truck continued to head east and went over the bridge into Missouri. Because Officer Johnson received word from the dispatcher that Powell did not have any active warrants for his arrest, he discontinued his pursuit as the truck crossed the state line. A few weeks after the incident, Virgil Stewart reported that the truck had been stolen. The truck was later recovered after it was found abandoned near 12th Street and Mound Street in Atchison.

The State charged Powell with felony fleeing or attempting to elude a police officer. The State also charged Powell with reckless driving, driving while suspended or revoked, speeding, failure to stop at a stop sign, failure to stop at a stop light, and failure to give a turn signal. On March 15, 2018, just five days before trial, Powell's attorney filed a notice of alibi witness. In the notice, he asserted that Bryce Andrew Berry would testify that he helped Powell move on the evening of October 15, 2017, and into the early morning hours of October 16, 2017.

The State objected to the late notice of alibi witness, noting that it was not served at least seven days prior to trial as required by K.S.A. 22-3218. In response, defense counsel argued that Powell did not tell him about the alibi witness until the evening of

3

March 14, 2018. On the morning of trial, the district court asked counsel: "Without divulging anything that you do not wish to divulge that would be in any way prejudicial to your client, were you able to discover why your client had not given you this since this case has been pending for five months?" Defense counsel responded: "Judge, I guess my best answer is, I guess I don't feel comfortable discussing that."

After considering the State's motion to exclude alibi testimony, the district court ruled:

"[T]his court is going to deny it, the use of an alibi witness, that was given five days . . . before trial in this matter.

"There were months available for the disclosure of any alibi witnesses that would allow both counsel to properly prepare the use of that witness.

"But the Court doesn't believe that at the last minute, in a case that has been of record, of file, multiple hearings, multiple appearances in court, that it just becomes available on the eve of trial.

"So for the record, the Court denies the request and does strike the use of an alibi witness at this time."

The district court commenced a one-day jury trial on March 20, 2018. During the trial, Officer Johnson testified about his pursuit of the truck in the early morning hours of October 16, 2017. He identified Powell as the driver of the truck that failed to stop and fled. Furthermore, Officer Johnson testified that he had no doubt that Powell was the driver. In addition, Officer Mason testified about his observations of the truck on the night of the high speed chase. Because he was concentrating on putting down the stop strips and staying out of harm's way as the truck drove toward him, Officer Mason could not see who was driving.

The defense went ahead and called Berry to testify at trial. Berry testified that he was incarcerated at the Atchison County jail and that he had been friends with Powell for

4

several years. In the past, Berry had worked with Stewart at a construction site, so he was also familiar with Stewart and his truck. Berry testified that he saw Stewart's truck parked in the backyard of Shon Crowe's residence located on 1100 Kansas Avenue from October 15 to 17, 2017. According to Berry, he never saw Powell operating the truck. Yet he admitted that he was not around the entire time, and he did not know who may have driven the truck when he was not there.

After deliberation, the jury convicted Powell on all of the charges except for speeding. Powell later filed a motion for a new trial and/or judgment of acquittal—based in part on the exclusion of his alibi witness—which the district court denied. The district court ultimately sentenced Powell to a controlling term of 14 months in prison. Powell then filed a timely notice of appeal.

ANALYSIS

*Late Notice of Alibi Defense*

On appeal, Powell first contends that the district court erred when it denied his untimely request to allow an alibi witness to testify. In response, the State argues the district court did not abuse its discretion in excluding the alibi witness because Powell failed to comply with the statutory notice requirements set forth in K.S.A. 22-3218. We review the exclusion of alibi testimony because of noncompliance with the statutory notice requirements under an abuse of discretion standard. See *State v. Claiborne*, 262 Kan. 416, 423, 940 P.2d 27 (1997).

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The party asserting the district court abused its discretion—in this case Powell—bears the burden of showing such abuse

5

of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018). To the extent that we need to interpret statutory language, our review is unlimited. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

Under K.S.A. 22-3218(1), when a defendant seeks to call an alibi witness "to offer evidence to the effect that he was at some other place at the time of the crime charged, he [or she] shall give notice in writing of that fact to the prosecuting attorney." The written notice must state where the defendant claims he or she was at the time of the crime and identify the names of the witnesses that the defendant wants to call in support of the alibi. K.S.A. 22-3218(2) requires that the written notice "shall be served on the prosecuting attorney at least seven days before the commencement of the trial." Even so, a district court may permit notice at a later date "[f]or good cause shown." K.S.A. 22-3218(2).

Here, it is undisputed that Powell failed to comply with the seven-day advance written notice requirement under K.S.A. 22-3218(2). Instead, he waited until the evening of March 14, 2017, just six days before trial, to tell his attorney about the proposed alibi witness. As a result, the notice was provided to the State just five days before trial. Still, Powell argues that the district court abused its discretion and denied his fundamental rights by not allowing him to call his proposed alibi witness notwithstanding his belated notice.

Prior to March 14, 2017, Powell had told his defense counsel only that he was not the driver of the truck that fled from Officer Johnson. He did not mention the potential alibi witness. When the district court asked if defense counsel knew why Powell had not given him the information about his alibi sooner, defense counsel responded: "I don't feel comfortable discussing that." Accordingly, Powell did not even provide an explanation—much less show good cause—for his failure to meet the time limitation for his statutory written notice.

6

In ruling that Powell had not shown good cause for his late endorsement of the proposed alibi witness, the district court found that "there were months available [to Powell] for the disclosure of any alibi witnesses that would allow both the defense and the prosecution to properly prepare the use of the witness." Although perhaps reasonable minds could disagree with this decision, we find this ruling to be reasonable under the circumstances presented and to fall within the district court's discretion.

In an attempt to escape the ramifications of an abuse of discretion standard, Powell suggests that the district court's decision deprived him of his fundamental constitutional rights to present a complete defense. See *State v. Johnson*, 304 Kan. 924, 939, 376 P.3d 70 (2016). However, as the Kansas Supreme Court has held, the fundamental right to a fair trial is "subject to statutory rules and caselaw interpreting the rules of evidence and procedure." *State v. Maestas*, 298 Kan. 765, 781, 316 P.3d 724 (2014). Furthermore, in *Claiborne*, our Supreme Court rejected an argument that K.S.A. 22-3218(2) deprives the defendant of a fundamental right, explaining that

> "the notice of alibi statute does not deprive the accused of the defense of alibi but simply makes notice of the defense a prerequisite. As pointed out in *Williams v. Florida*, 399 U.S. 78, 81, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970): 'Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate.' [Citations omitted.]" 262 Kan. at 423.

We agree that the statutory requirement of written notice seven days prior to trial is an important prerequisite—not only to protect the State's interest but also to protect the integrity of the judicial process. As our Supreme Court has determined, the right to present a defense at trial is not unlimited. See *Maestas*, 298 Kan. at 781. Likewise, the United States Supreme Court has recognized that a defendant's right to call and examine witnesses is not absolute and will sometimes be overridden by "other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). Here, Powell forfeited the opportunity to call a potential alibi

7

witness by failing to serve a timely written notice on the State as required by K.S.A. 22-3218(2). We thus conclude that Powell was not deprived of his right to present his defense.

Our Supreme Court has identified the type of factors to be considered by a district court when considering a belated attempt to endorse an *additional* alibi witness. See *State v. Bright*, 229 Kan. 185, 623 P.2d 917 (1981). Those factors include—but are not limited to—a determination of: (1) the reason why the witness was not disclosed in a timely manner; (2) the time when the alibi witness became known to the defense and whether the nondisclosure was willful or inadvertent; (3) whether the proposed testimony is trivial or substantial; and (4) the extent of the prejudice to the opposing party and the importance of the witness to be called. 229 Kan. at 194. We believe that these factors are also relevant in considering a belated attempt to endorse an alibi witness for the first time. Nevertheless, Powell has not offered any explanation—much less good cause—for his late disclosure.

K.S.A. 22-3218(2) expressly requires that written notice of an alibi witness be provided at least seven days before trial. As noted above, the district court has a legitimate interest in protecting the judicial process against the late endorsement of an alibi defense due to the ease with which an alibi may be fabricated. *Claiborne*, 262 Kan. at 423. Thus, K.S.A. 22-3218(2) allows the district court to permit the late endorsement of an alibi defense only "[f]or good cause shown."

In summary, Powell failed to give any indication in the belated written notice as to why he had not mentioned the proposed alibi witness to his attorney until only a few days before the trial was scheduled to begin. To this day, Powell has still provided no explanation—much less good cause—for his tardiness. Consequently, we conclude that the district court's determination regarding Powell's failure to show good cause for the

8

delay to be reasonable and, as such, there was no abuse of discretion in denying his request to belatedly endorse the proposed alibi witness.

*Constitutionality of Fleeing and Eluding Statute*

Powell further contends that K.S.A. 2018 Supp. 8-1568(b)(1)(E)—the fleeing and eluding statute—is unconstitutionally vague. In particular, Powell argues that the statute is vague because it does not define the meaning of the term "moving violation" and because there is no consistent definition of "moving violation" in Kansas statutes. In response, the State contends that a person of ordinary intelligence would understand the meaning of "moving violation" and would not be confused by the language of the statute.

At the outset, we note that Powell failed to raise the issue before the district court. Generally, a constitutional issue not raised before the district court is deemed waived or abandoned unless the party can show an applicable exception. *State v. Gross*, 308 Kan. 1, 6, 417 P.3d 1049 (2018). When an issue is raised for the first time on appeal, the party must explain why the issue is properly before the court. Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34). See *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014).

Powell claims his vagueness argument should be considered for the first time on appeal because the issue is purely a question of law and would be determinative of the case. See *State v. Atteberry*, 44 Kan. App. 2d 478, Syl. ¶ 4, 239 P.3d 857 (2010). In addition, he claims that a conviction under a vague statute offends the Due Process Clause, which is a fundamental right. See *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 2294 (1972). We find the constitutionality issued presented by Powell fits the asserted exception—as it is a question of law that is determinative of the case—so we will address it on the merits. See *State v. White*, 53 Kan. App. 2d 44, 55, 384 P.3d 13 (2016).

9

Whether a statute is constitutional presents a question of law subject to unlimited review. In reviewing a statute, we presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Thus, we have a duty to interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the Legislature's apparent intent. *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015).

A void for vagueness challenge is based on the due process requirement that a statute's language must convey a sufficient warning of the conduct proscribed when measured by common understanding and practice. *State v. Adams*, 254 Kan. 436, 438, 866 P.2d 1017 (1994). To determine whether a criminal statute is unconstitutionally vague, we employ a two-part test. First, we assess whether the statute gives adequate warning of the proscribed conduct. Second, we determine whether the statute adequately guards against arbitrary and unreasonable enforcement. *Bollinger*, 302 Kan. at 318. See *State v. McCune*, 299 Kan. 1216, 1235, 330 P.3d 1107 (2014).

Here, Powell was charged with felony fleeing or attempting to elude a police officer based in part on the allegation that he committed five or more "moving violations" under K.S.A. 2017 Supp. 8-1568(b)(1)(E), which provides:

> "(b) Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle when given visual or audible signal to bring the vehicle to a stop, and who:  (1) Commits any of the following during a police pursuit:  . . . (E) commits five or more moving violations."

Powell claims that the language "moving violations" in the fleeing or eluding statute is vague. He points out that K.S.A. 2017 Supp. 8-1568 does not define "moving violation," nor does it refer to any other statutory definition of the term. In support of his argument, Powell cites *State v. Richardson*, 290 Kan. 176, 180, 224 P.3d 553 (2010), in

10

which our Supreme Court found that "the definition of a moving violation is not intuitive." Powell lists a number of definitions found in Kansas statutes and regulations in his brief. We note that many of these statutes and regulations are discussed in *Richardson*, 290 Kan. at 180-81.

In *State v. Krinhop*, No. 118,087, 2018 WL 4167263 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. 1351 (2019), a panel of this court addressed a similar argument. After considering the conflicting definitions for moving violations in the Kansas statutes and regulations, the panel concluded:

> "Regardless of which definition is used, all of Krinhop's offenses—speeding, failing to stop at a red light and stop sign, and failing to signal a turn—were 'moving violations.' See K.A.R. 92-52-9[a][1](I) (failure to stop at a red light); K.A.R. 92-52-9[a][1](K) (failure to stop at a stop sign); K.A.R. 92-52-9[a][1](P) (failure to signal before a turn); K.A.R. 92-52-9[a][1](Q) (speeding); K.A.R. 82-4-1(t). There was no risk of confusion to Krinhop despite conflicting definitions and no need to provide any additional definition of 'moving violation.' Although the definition of 'moving violations' may not be a matter of common knowledge, the statute provided sufficient notice to Krinhop that speeding, failing to stop at a red light and stop sign, and failing to signal a turn were prohibited once Deputy Arnold signaled for him to stop. Thus, K.S.A. 2015 Supp. 8-1568 is not unconstitutionally vague as applied to *Krinhop*." 2018 WL 4167263, at *4.

Much like the situation in *Krinhop*, all of the offenses that the State relied on to establish that Powell "committed five or more moving violations" are moving violations as defined in K.A.R. 92-52-9(a). Because all of these violations are encompassed within the Uniform Act Regulating Traffic; Rules of the Road, K.S.A. 8-1501 et seq., as well as the Kansas Administrative Regulations regulating drivers' licenses, we find that there is no risk of confusion to a person of ordinary intelligence as to what constitutes a moving violation. Accordingly, we conclude that the fleeing and eluding statute gives Powell—as

11

well as others of ordinary intelligence—a reasonable opportunity to know what is prohibited.

Powell also makes a fleeting argument that the enforcement of the fleeing and eluding statute is arbitrary. Specifically, he argues that the various definitions of moving violations found in Kansas statutes and regulations can lead to arbitrary enforcement. But Powell provides no support for this assertion. Regardless, we find no danger of arbitrary enforcement in the fleeing and eluding statute as applied here. As noted, all of the moving violations committed by Powell that were relied on by the State are included within the Uniform Act Regulating Traffic as well as the Kansas Administrative Regulations.

We also reject Powell's argument that the rule of lenity should apply in this case. Under the rule of lenity, ambiguous criminal statutes are generally construed narrowly against the State. *State v. Hendricks*, 52 Kan. App. 2d 737, 743, 372 P.3d 437 (2016). The rule of lenity provides that in the instance of some legitimate ambiguity in the criminal statute, the ambiguous language should fall in favor of the defendant. 52 Kan. App. 2d at 743. Powell asserts that "[i]f there is some non-ambiguous construction of the term 'moving violation' under K.S.A. 8-1568, it should comport with the rule of lenity."

Powell invites us to review all of the possible definitions of moving violations under Kansas law and ensure that the alleged violations in this case meet all of those tests. We decline Powell's invitation because we find that K.S.A. 2017 Supp. 8-1568(b)(1)(E) provided sufficient notice to him that reckless driving, driving while suspended, failure to stop at a stop sign, failure to stop at a stop light, speeding, and failure to give a turn signal were the type of moving violations that could lead to a charge of fleeing and eluding a law enforcement officer. Powell also fails to demonstrate that the language in K.S.A. 2017 Supp. 8-1568(b)(1)(E) provides inadequate notice of the

12

proscribed conduct or that the statute was arbitrarily enforced. Thus, we conclude that K.S.A. 2017 Supp. 8-1568 is not unconstitutionally vague as applied to Powell.

*Jury Instructions*

Powell next contends that the district court erred when instructing the jury on the fleeing and eluding charge. First, Powell argues that the district court erred by not defining the term "moving violation" for the jury. He also argues that the district court erred by failing to include an essential element in the fleeing and eluding instruction. Specifically, Powell suggests that the jury instruction should have stated that the State had to prove that he committed five or more moving violations "during a police pursuit."

Appellate courts review jury instruction challenges in a three-step process: (1) We consider whether the issue is properly before the court; (2) we consider whether the jury instruction being challenged was legally and factually appropriate; and (3) we consider whether any error can be deemed harmless. See *State v. McLinn*, 307 Kan. 307, 317-18, 409 P.3d 1 (2018).

K.S.A. 2018 Supp. 22-3414(3) provides: "No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous." Here, Powell did not object to the jury instruction given at trial, nor did he request that a definition of "moving violation" be included in the jury instructions. Consequently, Powell has the burden to show the necessary prejudice and reversal of his conviction is not required unless he can establish that there has been clear error. See *McLinn*, 307 Kan. at 318.

As discussed above, each of Powell's offenses that the State relied on as a basis for the fleeing and eluding charge was a moving violation under both the Kansas statutes and

13

the Kansas regulations. In *Richardson*, our Supreme Court held that it was error not to instruct the jury on the specific underlying moving violations and their elements as the district court did in this case. See 290 Kan. at 181-83. Here, Instruction No. 6 given by the district court was modeled after PIK Crim. 4th 66.110. The instruction provided:

> "The defendant is charged with fleeing or attempting to elude a police officer. The defendants pleads not guilty.
>
> "To establish this charge, each of the following claims must be proved:
>
> "1. The defendant was driving a motor vehicle;
>
> "2. The defendant was given a visual or audible signal by a police officer to bring the motor vehicle to a stop.
>
> "3. The defendant willfully failed or refused to bring the motor vehicle to a stop for, or otherwise fled or attempted to elude, a pursuing police vehicle.
>
> "4. The police officer's vehicle, from which the signal to stop was given, was appropriately marked showing it can be an official police vehicle.
>
> "5. The defendant committed five or more moving violations.
>
> "6. This act occurred on or about the 16th day of October, 2017, in Atchison County, Kansas.
>
> "The elements of the alleged five moving violations, reckless driving, driving while suspended, speeding, failure to stop at a stop sign, failure to stop at a stop light, and failure to give a turn signal are set forth in instructions . . . 8, 9, 9a, 10, 11, and 12."

As specifically noted in Instruction No. 6, the specific elements of the alleged moving violations were included in Instruction Nos. 8, 9, 9a, 10, 11, and 12. As such, unlike *Richardson*, the jury in the present case was instructed on the elements of the moving violations relied on by the State to support the fleeing and eluding a police officer charge. Thus, we find no clear error because the jury was instructed regarding what constituted the moving violations that served as the basis of the charge. See *State v. Cruse*, No. 108,923, 2014 WL 1362647, at *6 (Kan. App. 2014) (unpublished opinion) (no clear error where the jury was told what constituted the moving violations).

Powell has also failed to establish that providing a definition of "moving violation" to the jury would have changed the outcome of the trial. We note that the district court instructed the jury on the elements the State was relying on to support its conviction, and the jury reached its decision based on the evidence presented at trial to support these violations. Under these circumstances, we are not firmly convinced that the jury would have reached a different verdict if the alleged instruction error had not occurred. See *McLinn*, 307 Kan. at 318; *Richardson*, 290 Kan. at 182-83.

Powell also claims the district court erred by failing to include an essential element of the crime when it did not instruct the jury that the moving violations occurred "during a police pursuit." To establish a violation of K.S.A. 2017 Supp. 8-1568(b)(1)(E), the State had to prove that Powell committed five or more moving violations during a police pursuit. In response, the State argues that when the jury instruction is read as a whole, it is clear that the moving violations had to occur after the driver was given a visual or audible signal to bring the motor vehicle to a stop. See *State v. Dupree*, 304 Kan. 377, 394, 373 P.3d 811 (2016).

Powell did not ask that language be added to the proposed jury instruction to clarify that the moving violations occurred "during a police pursuit," so he has the burden to show clear error. See K.S.A. 2018 Supp. 22-3414(3); *McLinn*, 307 Kan. at 318. As previously noted, Instruction No. 6—which provided the elements of fleeing and eluding a police officer to the jury—was modeled after PIK Crim. 4th 66.110. Our Supreme Court "strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarify, and uniformity to instructions." *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). The recommended PIK instruction does not clarify that the moving violations must occur during the police pursuit.

Moreover, when the jury instruction is read as a whole, it is evident that the moving violations must occur during a police pursuit. When the jury instructions are read

15

together, they inform the jury that it must first find that the officer signaled Powell to stop and then find Powell committed five or more moving violations. A review of the record reveals that the State presented evidence at trial that was sufficient to establish five or more moving violations committed by Powell after Officer Johnson had signaled for him to stop.

Powell notes that the only evidence that he ran a stop sign occurred before the pursuit. However, we do not know which acts the jury relied on in reaching its decision. For example, there was evidence presented at trial that Powell crossed the center line into oncoming traffic when he swerved to avoid the spike strips placed on the roadway by Officer Mason. This is an example of an act—reckless driving—committed by Powell that was not separately charged, but could have been found by the jury to satisfy the elements of fleeing and attempting to elude a police officer.

It is important to recognize that Powell has not challenged the sufficiency of the evidence to support his convictions. Furthermore, we cannot speculate as to the specific evidence the jury relied on to meet the elements of fleeing or attempting to elude a police officer. Certainly, it is possible that the jury relied on more than one of the same type of moving violation so long as it found from the evidence presented that Powell committed five or more moving violations during the police pursuit.

The jury was properly informed that it must find five moving violations, and the sequential order of the jury instruction informed the jury that it must find that those moving violations occurred after the officer signaled for Powell to stop the vehicle. We must presume the jury followed the instructions given by the district court. *State v. Thurber*, 308 Kan. 140, 194, 420 P.3d 389 (2018). Reading the jury instructions as a whole, we are not firmly convinced the result of the trial would have been different if clarifying language had been added to the jury instruction. Thus, we find no clear error and reversal is not required.

16

Next, Powell contends that the district court should have given a lesser included offense instruction for misdemeanor fleeing and eluding a police officer. In response, the State claims that Powell fails to explain how a jury that convicted him of five underlying moving violations could have also found him guilty of a misdemeanor. Again, we note that Powell did not request the lesser included offense instruction for misdemeanor fleeing and eluding a police officer, so he has the burden to show clear error requiring reversal. See K.S.A. 2018 Supp. 22-3414(3); *McLinn*, 307 Kan. at 318.

A lesser included offense instruction is legally appropriate when the lesser crime is an included offense of the crime charged and is factually appropriate when some evidence would reasonably justify convicting the defendant of the lesser included crime. K.S.A. 2018 Supp. 22-3414(3); *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014). Misdemeanor fleeing and eluding a police officer is a lesser included offense of felony fleeing and eluding a police officer because all of the elements of the misdemeanor offense are also elements of the felony offense. See K.S.A. 2018 Supp. 8-1568(a)-(b); K.S.A. 2018 Supp. 21-5109(b)(2). Thus, we find that a lesser included offense instruction was legally appropriate.

We also find the lesser included offense instruction was factually appropriate because the State presented evidence that met all of the elements of misdemeanor fleeing and eluding a police officer. See *State v. Fisher*, 304 Kan. 242, 257-58, 373 P.3d 781 (2016). Since the lesser included offense instruction was legally and factually appropriate, it should have been given to the jury. See K.S.A. 2018 Supp. 22-3414(3). Even so, Powell bears the burden of showing that the verdict would have been different had the jury been given the lesser included offense instruction.

Powell recognizes that the "analysis is somewhat difficult in this case because of the vagueness problem described above," but he essentially claims that the jury may have found that he did not commit all of the moving violations beyond a reasonable doubt

17

since he was acquitted of speeding. Powell further argues that there was a possibility the jury may have found him not guilty of the other offenses if the jury had been properly instructed. However, based on our review of the record, we find that there was evidence presented that Powell committed at least five moving violations during the police pursuit.

In particular, the record reveals that Powell engaged in reckless driving at more than one point during the pursuit—he drove while his license was suspended, he failed to stop at a stop light, and he failed to give a turn signal. Even though the jury acquitted him of speeding, there was evidence that he was traveling at a high rate of speed in excess of the speed limit. As previously noted, we presume the jury followed the instructions given and found that Powell committed five or more moving violations after Officer Johnson signaled for him to stop. See *Thurber*, 308 Kan. at 194.

Powell's speculative argument that the jury may not have found him guilty of five moving violations fails to meet his burden to show clear error. Even if a jury could have found Powell guilty of the lesser included offense does not mean that we believe the jury would have done so. See *State v. Cooper*, 303 Kan. 764, 772, 366 P.3d 232 (2016). We are not firmly convinced that the jury would have reached a different result if the district court had given the lesser included offense instruction. Accordingly, we conclude that Powell has not shown that giving the lesser included offense instruction would have changed the result of the trial.

*Cumulative error*

For his final issue, Powell contends that cumulative errors deprived him of his right to a fair trial. He argues that a combination of errors substantially prejudiced him so that reversal is required. Yet he provides no explanation regarding the substantial prejudice he claims to have suffered.

18

"When faced with a cumulative error claim, this court conducts an unlimited review of the entire record to determine whether the totality of the circumstances establishes that the cumulative effect of trial errors substantially prejudiced the defendant and denied the defendant a fair trial." *State v. Steward*, 306 Kan. 237, 265, 393 P.3d 1031 (2017). When any of the errors are constitutional in nature—as Powell asserts in this case—the cumulative error must be harmless beyond a reasonable doubt. *State v. Robinson*, 306 Kan. 1012, 1034, 399 P.3d 194 (2017). In a cumulative error analysis, we determine whether the combined effect of the errors deprived the defendant of a fair trial. *Armstrong*, 299 Kan. at 444-45.

The only identifiable error in this case is the failure to give a jury instruction on the lesser included offense of misdemeanor fleeing and eluding a police officer. A single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018). Likewise, based on our review of the record, we conclude that Powell received a fair trial. Accordingly, his claim of cumulative error fails.

Affirmed.